METROPOLITAN LIFE INSURANCE COMPANY
*v.*
ARTHUR J. ROUILLARD, *Insurance Commissioner & a.*

*Demond, Sulloway, Piper & Jones (Mr. Piper* orally), for the plaintiff.

*Frank R. Kenison,* Attorney-General, and *Ernest R. D'Amours,* Assistant Attorney-General (*Mr. Kenison* orally), for the defendants.

MARBLE, J.   The plaintiff is a mutual life insurance company duly licensed to transact business in this state.   The defendants are the Insurance Commissioner and the State Treasurer.

Section 60 of chapter 275 of the Public Laws provides that every foreign life insurance company shall pay annually to the State Treasurer "a tax of two per cent upon the gross premiums received by it from residents of the state" during the year, "less payments to residents of this state on account of death losses paid within the year."   The term "gross premiums received by it" is defined by the succeeding section (originally enacted as chapter 65 of the Laws of 1921) to mean "the total amount of premiums as stated in the policies without deduction on account of dividends used by policy-holders to reduce, or in part payment of, premiums."

The present controversy concerns two types of policies issued by the plaintiff, one an industrial life insurance policy requiring weekly premium payments, the other a so-called group annuity contract. The premiums due under the provisions of the industrial policy are usually paid to agents of the plaintiff, who call on the policy-holders to make collection.   There is, however, a clause of the policy, entitled "Refund on Direct Payment of Premiums," which provides that policyholders who pay their premiums at the plaintiff's office for a period of fifty-two weeks without default shall be entitled to a refund of ten per cent of the aggregate amount paid during the year.

By the terms of the group annuity contract the plaintiff in consideration of a premium paid by an employer, to which in most cases the employees to be benefited contribute, agrees to pay a retirement annuity to such employees when they attain a certain age and meet certain other requirements.   This form of policy also provides that "prior to the commencement date of the annuity, the employee has the right to elect not to receive such annuity, and upon such election, all amounts theretofore contributed by him are to be refunded to him; that if the employee dies before the commencement date of the annuity such refund shall be made to his beneficiary; and that in the event that the employee becom es no

18

longer entitled to receive an annuity at retirement age, because of failure to meet the conditions prescribed in the contract (*e.g.*, if the employee terminates his employment or elects to have his premium contributions refunded to him), the employer is entitled to receive a refund of a substantial proportion of the premium contributions theretofore made by him on account of the employee."

It is the plaintiff's contention that neither the refunds made to the holders of industrial policies nor the refunds made under group annuity contracts are properly a part of the "gross premiums received" by the plaintiff within the meaning of section 60.

The tax imposed by the statute is in its essence a fee which foreign life insurance companies are required to pay for the privilege of doing business in this state. *New York Life Ins. Co.* v. *Sullivan*, 89 N. H. 21, 29. From 1901 to 1909 foreign fire, marine, fidelity, and casualty companies were required to pay a tax of two per cent on gross premiums, "less return premiums and reinsurance," while "all other such [foreign] insurance companies" were required to pay a tax of one per cent on "premiums" (not designated in the statute as "gross"). Laws 1901, c. 67, s. 1; Laws 1905, c. 109, s. 1. In 1909 life insurance companies were separately classed in the statute for the first time and required to pay a tax of two per cent on gross premiums, less payments on account of death losses. There is nothing in the statute to indicate that the word "gross" is not to be given its usual meaning of "whole; entire; total; without deduction." *First Trust Co. of St. Paul* v. *Company*, 98 Fed. (2d) 27, 32, and cases cited.

In 1921 the legislature saw fit to define the term. Laws 1921, c. 65, s. 1. (P. L., c. 275, s. 61). But any "implicative force" (*Protective &c. Co.* v. *Collins, post* 27) which the definition might otherwise have in favor of the construction urged by the plaintiff, is negatived by the following circumstance. By the year 1921 there had grown up in this country, as stated in the plaintiff's brief, "a large volume of authority to the effect that dividends paid to policyholders in cash or credited to them in part payment of premiums should be deducted in determining the amount of the gross premiums received by the Company under statutes similar to our own." In view of this "volume of authority" it is fair to assume that the statute of 1921 was enacted, not for the purpose of limiting the scope of the term "gross premiums," but to forestall a possible interpretation of the term by the courts of this state in accordance with the prevailing trend of the decisions.

"The gross premium, or the amount charged in the contract of life insurance, ordinarily includes two elements, that is, the net premium and the loading. The loading, or the amount arbitrarily added to the net premium, is intended to cover the expenses of the company. In a stock company it may also be a source of profit and in a mutual company, a source from which dividends may be paid to the insured." *Fox* v. *Insurance Co.*, 107 Fed. (2d) 715, 717. See, also, 2 Joyce, Insurance (2d *ed.*), *s.* 1083, *p.* 2171.

It was conceded in oral argument that the expense of collecting the premiums due from the holders of industrial policies is approximately ten per cent of the premiums collected, and it is the defendants' contention that the refund on direct payment of premiums is essentially an item of collection expense. The argument in support of this contention seems quite incontrovertible. It is said: "The plaintiff will admit that the ten per cent refund is made to induce the policyholder to make his payments directly to the Company and thus avoid the payment of a ten per cent charge to the Company's local collector. Certainly, any commission paid to such a local collector could not be deducted from the Company's gross premiums and for that reason the ten per cent refund which stands in its stead cannot be treated differently because it is paid to the assured instead of to the local collector. If the ten per cent refund to the assured is deductible and if it be made to appear later that the commission paid the local collector is only the equivalent of that ten per cent, there would be no basis in the realities of the situation for not allowing a deduction for the commissions paid to the local collector. In either event, it is money not retained by the Company."

This latter statement has reference to the contention of plaintiff's counsel that the word "receive" implies finality and that the plaintiff cannot be said to have received premiums within the meaning of the statute when those premiums are not to be permanently retained. While authority for this position is not wanting (see *In re Continental Casualty Co.*, 189 Iowa 933, 938, and cases cited), we believe that the "clear direction of the statute" (*Ib.*, 938), when its history is considered (see *New York Life Ins. Co.* v. *Burbank*, 209 Iowa 199, 208), precludes the adoption of this view.

Nor can we assent to the proposition that inasmuch as the refund is "provided for in the contract," the gross premium as defined in the statute is to be determined by reading the premium clause and the refund clause together. Construed in connection with the en-

actments already considered, the phrase "total amount of premiums as stated in the policies" can only mean the total amount of the premiums there stated as such.

Much that has been said concerning the industrial policy is equally true of the group annuity contract. The provisions relating to premiums appear in article II of that contract under the heading "Stipulated Payments to the Insurance Company;" the provisions relating to refunds appear in article III under the heading "Benefits and Other Payments by the Insurance Company."

These latter provisions call for the return of premium contributions upon the surrender or cancellation of the contract. As already indicated, deduction of "return premiums and reinsurance" is expressly authorized in the case of fire, marine, fidelity, and casualty companies (P. L., c. 275, s. 59), but the only deduction allowed a life insurance company is one for death losses (P. L., c. 275, s. 60). On general principles of statutory construction, the provision for this single deduction, particularly in view of the deductions permitted the other insurance companies, evinces a legislative intent to exclude all other deductions. *Howe* v. *Howe*, 87 N. H. 338, 341; *State* v. *Railroad*, 89 N. H. 59, 61; *State* v. *Goonan*, 89 N. H. 528, 529.

It is our conclusion that the refunds payable under each type of insurance contract here considered are properly a part of the gross premiums received by the plaintiff and are therefore taxable under section 60 of chapter 275 of the Public Laws.

*Judgment for the defendant.*

All concurred.