Argued January 25, reversed February 8, 1956

# CROOK *v.* CURRY COUNTY

### 292 P. 2d 1080

*Frederic H. Starkweather, Jr.*, of Gold Beach, argued the cause and filed a brief for appellant.

*Samuel A. Hall* and *David Fortier*, of Brookings, argued the cause for respondent. On the brief was Samuel A. Hall.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, LATOURETTE and PERRY, Justices.

LATOURETTE, J.

Plaintiff, H. W. Crook, appeals from a decree in a declaratory suit wherein defendant, Curry county, is adjudged to be the owner of certain standing timber on land owned by plaintiff.

Prior to October 14, 1943, the Port Orford Lumber Company was the owner of the following described property, to-wit: Government Lots 1, 2 and 8 of Section 15, Township 38 South, Range 14 West of the Willamette Meridian in Curry county, Oregon. On that

date the lumber company deeded to plaintiff said property, which deed contained the following reservation, to-wit:

"* * * reserving, however, unto the grantor herein the right for a period of five years from and after the date hereof to enter upon the said premises and to take and remove therefrom any and all timber and logs and natural vegetation of any and every kind and species and to construct and use roads and camps upon the said premises useful or necessary in the opinion of the grantor in connection with the removal of logs and other forest products from the said premises, and to do all things which the grantor may deem it expedient to do upon the said premises incidental to the removal of logs and forest products from the said premises."

For a number of years thereafter the timber was assessed separately to the lumber company. The plaintiff seasonably paid his taxes on the land without any knowledge of the separate assessment on the timber until tax foreclosure proceedings were instituted. In due course of time, no taxes having been paid on the timber, the county acquired a claimed title to it through the tax foreclosure.

The precise question is whether or not plaintiff owns the timber in controversy by virtue of the deed dated October 14, 1943, conveying to him the real property on which the timber is standing, or whether the county owns the timber by virtue of a tax foreclosure.

To resolve the question, we must first consider the law relating to the statutory authority of the assessor to tax timber separately from land. Sections 110-102 and 110-314, OCLA, as amended by Oregon Laws 1943, ch 304, are, in part, as follows:

"The terms 'land', 'real estate' and 'real property' shall be construed to include the land itself,

\* \* \* and likewise all \* \* \* trees in, under or upon the land; \* \* \*

"In all cases where the grantor of land or real property has, *in the deed or instrument of conveyance, reserved or conveyed any or all of the timber standing upon such land, with the right to enter upon the ground and remove said timber,* the ownership of the standing timber so reserved or conveyed shall be deemed, and hereby is declared to be, an estate and interest in land or real property; \* \* \*

"Whenever any standing timber \* \* \* is owned separately and apart from the rights and interests owned in the surface ground of such real property, such standing timber \* \* \* shall be assessed and taxed as real or personal property in accordance with existing law in the name of the owner thereof, \* \* \*." (italics ours)

■ From the above it is clear that before timber may be assessed separately from the land, there must be within the deed of conveyance itself a provision reserving or conveying all of the timber standing upon such land, with a right to enter upon the ground and remove the timber. The reservation contained in the deed to the plaintiff does not reserve to the lumber company any or all of the timber standing upon the land, but merely the right for a period of five years to go upon the land to take and remove the timber involved.

■ The law is well settled that a mere reservation of a right to remove timber from land creates a license and not an estate in the land or timber.

54 CJS 730, Logs and Logging § 29 reads as follows:

"A license to cut timber and remove it does not give any estate, right, or title in the land on which the licensee is permitted to cut; nor does it, prior

to actual severance, vest title to the timber in the licensee, although a valuable consideration has been paid."

We quote from 34 Am Jur 519, Logs and Timber § 42, as follows:

"As indicated in the preceding section, whether the exception or reservation relates to the title or to a mere right of removal frequently depends upon and involves the construction of the language used. The terms 'reservation' and 'exception,' although strictly distinguishable, are often used interchangeably or indiscriminately in this connection, and the use of either term is not conclusive as to the nature of the provision. It has been held that a clause in a deed which conveys land, reserving 'the privileges of selling and removing any timber from said land that [the grantor] may desire to sell or to use, and also the right of way through said lands to remove the same,' does not reserve title to the timber. Such a reservation creates only an unassignable license which will be revoked by an attempt to assign, and which will be terminated by the passage of the land into the hands of a third party, by sale. Also, the view has been taken that where the grantor reserves to himself the right to cut and remove certain timber, and to enter upon the land for that purpose for a stipulated period of time, this is not an exception out of the estate granted, but the mere reservation of a right which terminates at the expiration of the period of limitation."

In *United States Coal & Oil Co. v. Harrison,* 71 W Va 217, 76 SE 346, the father deeded to his daughter a certain tract of land with the following reservation, to-wit:

"* * * And the said William B. Dempsey also reserves to himself and to his said wife the privileges of selling and removing any timber from said

[land] that they may desire to sell or to use and also the right of way through said lands to remove the same.''

In that case the court said, ''No reservation of the timber itself in express terms is found in the clause. Only sale and removal privileges are reserved, * * *. They reserved no interest in the land except right of ingress or egress to remove such timber as they should cut or cause to be cut, a mere incident of the license.''

In *Keystone Lumber Co. v. Kolman,* 94 Wis 465, 69 NW 165, the grantor sold, granted and conveyed to the grantee the right to cut and remove, for its own use, during the period of twenty years, all the pine timber standing and being on the said lands, for a full consideration, of which it acknowledged the receipt. The court said, ''The instrument under which the plaintiff claims title to the lumber in controversy is a mere license to cut and remove the timber. This is clear from its expressed terms. * * * the title to the timber did not pass to or vest in the licensee until it should be severed from the land. The mere license to cut and remove the timber did not vest the title to the timber in the licensee.''

In the case of *Sandy Holding Co. v. Ferro,* 144 Or 466, 25 P2d 561, plaintiff's predecessor in interest sold on June 1, 1922 to defendant's predecessor in interest a saw mill situated on certain premises and granted defendant's predecessor in interest the right to cut and remove the timber from the premises within a period of 10 years. We find the following language in the Sandy case, to-wit:

''The contract between Jonsrud and Linden and Pearson under which the defendant claims did not expressly sell to Linden and Pearson the timber

on the quarter-section of land, but did grant to them the right until June 1, 1932, to cut the same and remove it from the premises.

"* * * * *

"The contract under which the defendant claims merely granted his predecessor in interest the right to remove the timber before a certain date. So much of the timber as was removed by him before the date fixed in the contract, or any extension thereof, would belong to him."

See *Elliott v. Bloyd,* 40 Or 326, 67 P 202, *Anderson v. Miami Lumber Co.,* 59 Or 149, 116 P 1056, *Coquille M. & T. Co. v. Dollar Co.,* 132 Or 453, 285 P 244.

■ In the light of the foregoing, it is clear that the lumber company reserved no timber standing upon the land it conveyed to plaintiff, but merely a license to remove the timber for a period of 5 years. In this state of the record, the timber assessment of the assessor of the county was void and ineffective.

■ It has been suggested that the clause relating to the removal of timber is ambiguous in that it does not clearly define the status of the parties. Even if this were so, it must be remembered that a tax operates in invitum and the general rule is that where there is an ambiguity a tax statute should be liberally construed in favor of the taxpayer. There is another well recognized rule that in the case of ambiguity, all circumstances revolving around the execution of the document may be considered to ascertain the intention of the parties. See *Parsons v. Boggie,* 139 Or 469, 11 P2d 280.

■ In the present case the evidence is conclusive that when the lumber company executed the deed to plaintiff, it had cut all merchantable timber standing on the premises. There remained, however, certain tim-

ber which had been felled and bucked, but which was later removed. It is unbelievable that if the lumber company had intended to reserve title to the standing timber that it would not have so stated in the deed. Under the state of the record, it is more logical to believe that in putting the reservation in the deed it was done for the purpose of giving the lumber company ample opportunity to remove the down timber.

The conclusions which we have reached render it unnecessary to discuss the other grounds argued by defendant.

Reversed.