Argued February 4, reversed April 20, 1960

# STATE INSURANCE COMMISSIONER *v.* ALLSTATE INSURANCE COMPANY

351 P. 2d 433

*Donal D. Sullivan*, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Robert Y. Thornton, Attorney General, and Lloyd G. Hammel, Assistant Attorney General, Salem.

*Winfrid Karl Liepe*, Portland, argued the cause for the respondent. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester, Portland.

Before McAllister, Chief Justice, and Rossman, Lusk\*, Perry, Sloan, O'Connell and Harris, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, the Insurance Commissioner of this state, from a judgment which the circuit court entered in favor of the defendant,

---

\* Resigned March 15, 1960.

Allstate Insurance Company, after it had sustained a demurrer to the complaint which challenged that pleading upon the ground that it did not state a cause of action.

The complaint alleges that the Allstate Insurance Company, an Illinois corporation, conducts a casualty insurance business in this state. It affords to applicants for insurance the option of paying the annual premium in either of two ways. If the insured so chooses, he may pay the entire premium at the beginning of the term. On the other hand, he may elect to pay the premium in installments. If the latter choice is embraced, a charge of twenty-five cents is added to the down payment and to each subsequent payment. The additional fee approximately covers the cost of the installment plan; it is not designed to yield a profit for the company. This proceeding centers in the twenty-five cent installment fee. It is the Insurance Commissioner's contention—a contention disputed by the defendant and rejected by the trial court—that the fee is a part of the premium collected by the company for insurance and, therefore, taxable under ORS 736.225 as a part of the "gross amount of premiums" received by the company. The sole question presented by this appeal is the proper construction and application of these words of the statute.

The complaint alleges that the defendant insurance company has been engaged in business in this state since August 10, 1935. The present tax statute, ORS 736.225, has been in effect since that time, substantially unchanged. Oregon Laws 1917, ch 203, § 3-d, p 319, as amended; Oregon Laws 1923, ch 214, p 302; Oregon Laws 1939, ch 262, p 507; Oregon Laws 1945, ch 302, p 452; Oregon Laws 1947, ch 176, p 223; Oregon Laws 1951, ch 466, p 807; Oregon Laws 1955, ch 728,

p 1038; Olson Oregon Laws 1920, § 6330, p 2530; Oregon Code 1930, § 46-109; § 101-109, OCLA. The statute reads in pertinent part as follows:

"(1) Every foreign or alien insurance company, in its annual statement to the commissioner shall set forth:

"(a) The gross amount of all premiums received by it during the preceding calendar year from policies or contracts of insurance covering risks within this state.

"(b) Return premiums paid.

"(c) Payments made policyholders.

"(d) Consideration paid other companies for reinsurance during such year.

"(e) Premiums received for reinsurance of risk during the preceding calendar year. * * *"

A percentage tax, ranging over the years from 2 to 2¼ per cent, is imposed upon the amount of premium reported after a deduction has been made for return premiums, dividend payments to policyholders, and consideration received for reinsurance. A definition of "gross amount of premiums" was added to the statute in 1939 by Oregon Laws 1939, ch 262, p 507. It reads as follows:

"The term 'gross amount of premiums' for the purpose of taxation and reports means the consideration paid by the insured to the insurer for a policy or contract of insurance and includes all premiums, assessments, dues and fees received or derived, or obligations taken therefor, by whatever term known, from business in this state. This definition is for the purpose of clarity and is not intended to add to or detract from the meaning of the term 'gross amount of premiums.' "

The tax imposed by ORS 736.225 is commonly known as a "gross premiums" tax—"gross premiums" and

"gross amount of premiums" being synonymous terms. See ORS 736.205 (3).

The complaint alleges that the defendant has never reported or paid a tax upon the installment fees collected. For the twenty year period in question the fees amount to the substantial sum of $96,891.86 and the tax to slightly more than two thousand dollars. By letter dated January 24, 1957, the Insurance Commissioner demanded of the defendant payment of the delinquent taxes but the defendant refused to comply. The commissioner therefore seeks to recover both the amount of overdue taxes and the discretionary penalties for which ORS 736.225 (6) makes provision.

The defendant argues that the installment charge can not be classified as gross premium because it is not paid, so the defendant contends, as consideration for insurance. It claims that the fee buys only the privilege of paying in installments and maintains that the installment plan is in no sense an overhead cost of providing insurance. The commissioner contends, on the other hand, that the installment fee is a part of the "loading" factor of premium and hence must be taxable gross premium.

■ To understand the contentions of the parties one must have in mind the definition of "premium" that is used in insurance law and business. The insurance premium is commonly understood to consist of two elements, the "net premium" and the "loading." A typical definition of these terms is that given by Couch:

> "In the law of insurance, the premium, as distinguished from an assessment, ordinarily, is the agreed price for assuming and carrying the risk; that is, the consideration paid an insurer for undertaking to indemnify insured against a specified peril. The part of the premium intended to meet

the cost of insurance, both current and future, and carry it from period to period, is called the 'net premium;' it is the sum paid periodically by each to furnish the stipulated protection for all. In addition to this amount, the policyholders also pay what is known as a 'loading' rate, which is a sum added to the net premiums for administration, management, and operating expenses, as well as for emergency purposes, and, in some cases, profits. And this sum, added to the 'net premium,' creates what is known as the 'gross premium.' " 3 Couch, Cyclopedia of Insurance Law, § 579, p 1850.

As pointed out by another writer:

"* * * The net premium is set by law, the expense loading by the company's method of management. * * * 1 Appleman, Insurance Law & Practice, § 2, p 8.

See also Vance, Insurance (3d ed) § 8, p 65; 1 Richards, Insurance (5th ed) § 23, p 84; *State Compensation Insurance Fund v. McConnell*, (1956) 46 Cal2d 330, 294 P2d 440; *State ex rel Brewster v. Wilson*, (1918) 102 Kan 752, 172 P 41, LRA 1918D 955; *Fox v. Mutual Ben. Life Ins. Co.*, (8th cir, 1939) 107 F2d 715; *Rose v. Franklin Life Insurance Co.*, (1910) 153 Mo App 90, 132 SW 613; *Metropolitan Life Ins. Co. v. Rouillard*, (1942) 92 NH 16, 24 A2d 264.

The loading factor of premium therefore consists of the overhead expenses of writing insurance as well as the creation of a reserve for contingencies and a margin of profit in some cases. If the installment plan used by the defendant is an expense of providing insurance, it is apparent that the fee collected for the service is an item of loading within the definitions cited. In this connection it is well to note that our legislature has left the determination of insurance fees in large measure to the discretion of the individual

company, subject to the requirement that rates "shall be just, reasonable and not unfairly discriminatory." ORS 737.010 (1). It is expressly provided that the chapter regulating insurance rates and rating organizations, ORS chapter 737, is not intended to prohibit or discourage reasonable competition. ORS 737.010 (2)(a). More significant yet is the provision that the casualty insurance rates of any insurer "may differ from those of other insurers or groups of insurers to reflect the requirements of the operating methods of any such insurer." ORS 737.110 (3). The statutory scheme of regulation therefore does not attempt to prescribe what are proper loading expenses of insurance and furnishes no guide as to whether installment operations are such an expense.

We think it is plain, however, that the defendant's attempt to segregate the cost of an installment plan from the other costs of providing insurance is arbitrary and seeks to draw a line where none can be traced. This is the second "gross premiums" taxation case involving the defendant's installment plan to come before a state appellate tribunal. *Allstate Insurance Company v. State Board of Equalization,* (Cal App, 1959) 336 P2d 961, presented exactly the same question of law that is to be determined here. In that case Allstate's contention that installment payments were not "gross premium" was rejected. The court reasoned as follows:

"* * * Plaintiff made the charge of the 'installment payment fee' directly to the insured in order that the increase of its expense from acceptance of installment premiums be passed directly to the insured. The option to the insured was whether he wanted to pay in installments. If he did, he was required to pay the installment payment charge. The option was not whether he wished to pay the

charge but in what form he wished to pay the premium, i.e., cash or installments. The insured paid the fee as part of the cost of the insurance he wanted. The 'installment payment fee' was an item of expense loading to cover the additional cost of the installment premium plan, and was in the same category as the expense loading in the cash premium. It was 'actually given by the insured for his insurance.' Groves v. City of Los Angeles, supra, 40 Cal.2d 751, 761, 256 P.2d 309, 315. * * *"

If the defendant in our case based its annual rate upon the theory that everyone would pay by installments, and granted no deduction for lump sum payment, we think that no one would contend that the amount of charge necessary to cover the cost of the deferred payment plan was anything but loading. As the California court has pointed out, defendant has not one insurance plan plus an installment plan, but two separate and independent insurance plans which offer the same benefit at different rates based upon the actual cost of providing coverage under each plan. An installment plan, like advertising, is an inducement to the customer to buy and as a cost of the business it must be included in the price of the product. We can not accept the contention of the defendant that "gross premium" under the most costly plan must be limited in amount to "gross premium" charged for the less expensive, and the difference set apart and categorized as something else.

Defendant makes much of the fact that the installment fee does not include an element of profit but is limited to the actual cost of deferring premium. This, it argues, demonstrates that the fee pays only for the installment plan and not for insurance. For the reasons already stated, we do not deem this fact material.

The meaning of "gross premium" for taxation pur-

poses has been litigated often and the decisions evince an unwillingness to permit name to control substance. It has been held that "gross premium" includes the fees paid by an applicant to a title abstract company and to a firm of attorneys for examination of title where the title insurer designated these as its agents and based its policies of insurance upon their reports. *Lawyers Title Ins. Corporation v. Board of Ins. Com'rs.*, (Tex Civ App, 1948) 207 SW2d 972. So-called "membership fees" which an individual pays for the privilege of applying for insurance, and which include some of the expenses ordinarily charged to premium have been held to be "gross premium." *Duel v. State Farm Mut. Automobile Ins. Co.*, (1941) 240 Wis 161, 1 NW2d 887, 2 NW2d 871; *State Farm Mutual Automobile Insurance Co. v. Louisiana Insurance Rating Commission*, (1955) 79 So2d 888. Another case involving State Farm Insurance Company's "membership fee" held that where "substantial evidence" indicated that no part of the fee (1) was used to pay for the ordinary costs of insurance, (2) entitled the applicant to receive insurance or (3) was refunded if insurance was not granted, the "membership fee" was not a part of premium. *State Farm Mut. Automobile Ins. Co. v. Carpenter*, (1939) 31 Cal App 2d 178, 87 P2d 867. Even in this case, however, the implication is that had the membership fee been used to pay some part of the cost of providing insurance, it would have been taxable as "gross premium."

Several cases have been brought to test the tax consequences of Metropolitan Life Insurance Company's plan under which 10 per cent of the premium is remitted to the insured when he pays directly to the home office instead of to collecting agents. The 10 per cent represents the saving effected by elimina-

tion of the agents' services. It has been held that money returned to policyholders in this way is tax-reportable premium, both under statutes which permit the deduction of such amounts as "premium returned," *Commissioner of Corporations & Taxation v. Metropolitan Life Ins. Co.*, (1951) 327 Mass 582, 99 NE2d 866, and under statutes which permit no such deduction, *Metropolitan Life Ins. Co. v. Scheufler*, (Mo, 1944) 180 SW2d 742; *Metropolitan Life Ins. Co. v. Rouillard*, (1942) 92 NH 16, 24 A2d 264; contra, *State ex rel Brewster v. Wilson*, supra. The noteworthy fact about these cases is that neither the parties nor the courts ventured to suggest that the 10 per cent attributable to costs of collection through agents was anything other than premium; yet, if the defendant's argument here is to be sustained, one might as well argue that only 90 per cent of the sums collected by Metropolitan Life Insurance Company was in fact premium and that the additional 10 per cent paid not for insurance but for a plan of collection convenient to policyholders.

In a case involving a municipal tax upon the gross receipts of bail bond agents it has been held that where the subagent of a bail bond company was permitted to charge an applicant as much as 10 per cent of the face value of the bond but was required to remit only 2 per cent to his principal, who in turn remitted 1 per cent to the bonding company, the entire amount collected from the applicant was premium and hence could not be lawfully subjected to the municipal tax, the state constitutional provision levying a "gross premiums" tax upon insurers being exclusive. *Groves v. City of Los Angeles*, (1953) 40 Cal 2d 751, 256 P2d 309.

■ A belief that installment fees are part of the "gross amount of premiums" would find support in the

statutory definition of the term which requires the inclusion of "all premiums, assessments, dues and fees received or derived, or obligations taken therefor, by whatever term known, from business in this state." True, as the defendant urges, the statute goes on to state:

> "* * * This definition is for the purpose of clarity and is not intended to add to or detract from the meaning of the term 'gross amount of premiums.' "

But, unless we are to construe this last sentence as robbing what goes before of all meaning or as making it a guide for laymen only and not for the courts, we must conclude that the definition as a whole evinces a legislative purpose to embrace all considerations for insurance that properly are premium under whatever name or form disguised. As we construe the last sentence, it means no more than that the "gross premiums" tax is not, by reason of the definition, to be construed as a "gross receipts" tax. Thus, conspicuously absent from the list of items which the statute requires to be included as "gross amount of premiums" is the annuity payment, the status of which is disputed—some courts holding that it is taxable as "gross premium" and some that it is not. Vance, Insurance, (3d ed) § 200, p 1019, 1025; Annotation, 109 ALR 1060, 135 ALR 1248.

This history of the definition section of ORS 736.225 is in accord with our views. It was adopted at the urging of the Insurance Commissioner one year after the circuit court for Multnomah County entered a declaratory judgment to the effect that "membership fees" were not gross premium, although used for agents' commissions and risk investigation of the applicants. *State Farm Mutual Automobile Ins. Co. v. Earle*, Multnomah County Circuit Court, No. 125-696, January 29,

1938. An appeal to this court was dismissed when the case was compromised.

█ In urging affirmance of the judgment below, the defendant makes two additional arguments which have some force and merit attention here. First, it contends that the gross premium tax is in the nature of an excise tax or a sales tax measured by the price of the goods sold—in this case, insurance. It argues that the general practice in this country is to exempt installment and carrying charges from the base upon which a sales tax is levied and urges that we follow this practice in the field of insurance taxation.

The "sale price" or "gross proceeds of sales" or "gross receipts" or other verbal formula upon which sales taxes are based is a matter of extensive statutory definition in every one of the states which has enacted a sales tax. For a compendium of these various acts consult Northrup, "The Measure of Sales Taxes," 1956, 9 Vand L Rev 237. Installment fees and carrying charges have been overlooked in most of the acts and are neither specifically excluded from nor included in the tax base. Three statutes have come to our attention which in terms exempt such charges from taxation: Tenn. Code Ann. (1955) § 67-3002; N.C. Gen. Stats. (1958 replacement) § 105-164.3; Maryland, Ann Code (1957) Art 81, § 324, while at least one statute requires their inclusion: Miss Code 1942 Ann., § 10104. A number of others are ambiguous. There are unusually few judicial decisions in point. *Bachrach Motor Co. v. Posadas*, 53 Philippine 999 (1929) held that installment interest was not taxable under a statute which based the excise upon "the actual selling price or value of the things in question at the time they are disposed of." *Berman's Jewelry Store v. United States*, (4th Cir, 1952) 198 F2d 675, contains obiter to support

defendant's view. It has been held that interest paid by a purchaser to the seller of bonds for the privilege of deferring payment can not be taken into account as part of the purchase price so as to reduce taxable gain upon resale of the bonds. *Colonial Enterprises v. Commissioner of Internal Revenue*, 47 BTA 518 (1942). There are administrative rulings to the effect that bona fide finance charges are not subject to the sales tax. Internal Revenue Service, Special Rulings of April 25, 1957, and June 25, 1957, CCH Standard Federal Tax Reporter, 1957, paragraphs 6453, 6550; Smith-Hurd Ill Ann Stats, Adm Rules & Regs (1955) Art 3(4)(b), ibid 1 CCH Ill. Tax Reporter Paragraph 60-063. Possibly the rarity of litigation in this area is some indication that finance charges are not taxed.

Admitting, for the sake of argument, that defendant has correctly ascertained the practice prevailing in the sales tax law, we nevertheless must decline to be persuaded by it here. As a practical matter we think finance and carrying charges are properly part of the sales price of merchandise. Without doubt, however, the encrustation of years of trade custom and administrative practice should have great weight in the interpretation of an ambiguous sales tax statute and might well be determinative. On the other hand, a gross premiums tax is not a sales tax although the analogy is close. There is no evidence that the authors of the gross premiums tax had sales tax experience in mind, and there is no background of practice in the insurance industry or history of insurance regulation which is persuasive that installment fees of the kind involved here should not be taxed. This being so, we do not feel constrained to adopt the rule which the defendant urges upon us.

Finally, the defendant likens the installment fee

to interest upon a promissory note given for insurance and argues that such interest is not gross premium. Oregon follows the general rule that a promissory note may be accepted by an insurer as payment of the premium. *Morford v. California-Western States Life Ins. Co.*, (1939) 161 Or 113, 88 P2d 303; *Union States Life Insurance Company v. Bernert*, (1939) 161 Or 44, 87 P2d 774; *Cranston v. West Coast Life Insurance Company*, (1912) 63 Or 427, 128 P 427; Vance, Insurance (3d ed) § 51, p 303, 307.

Of the cases cited by the defendant, only *Northwestern Mutual Life Insurance Co. v. State*, (1915) 163 Wis 484, 155 NW 609, affd (1918) 247 US 132, 38 S Ct 444, 62 L Ed 1025, contains some language which might be thought to support the proposition that interest on premium notes is not itself premium. In fact, the court did state that "interest on premium notes and policy loans" was not premium so as to gain exemption from a Wisconsin tax. However, in its ensuing detailed discussion of the facts, the Wisconsin court focuses its attention exclusively upon interest obtained from certain loans made to policyholders against the cash surrender value of their policies. Nowhere does it refer to any loan notes given in payment of ordinary premium. We must therefore assume that the "premium notes" referred to by the court were notes given for these policy loans. If any ordinary premium notes were in fact involved in the case, they received no attention. Aside from this decision, we find no authority which either supports or rejects defendant's view.

We mention the defendant's contention here because premium note interest is obviously very much like installment fees of the kind in controversy. The similarity is even closer in view of the general rule that

an insurer may, by appropriate contract provisions, accept a promissory note in payment of premium conditionally, reserving its right to cancel the insurance upon default in payment of the note. Vance, Insurance, (3d ed) § 56, p 339. Defendant has raised an important question to which we have given consideration in the decision of this case. However, the taxability of interest upon premium notes is a question not before the court and we do not pass upon it here. As we have said, there are similarities to the case at bar; there are also differences. We content ourselves with noting that ORS 736.225 does levy the gross premium tax upon "obligations taken" in payment of premium without specifying whether interest is to be included or excluded.

■ We agree with the defendant's numerous citations of authority to the effect that in the interpretation of tax statutes doubtful cases are to be construed in favor of the taxpayer and against the state. However, we do not find the necessary degree of uncertainty in this case. The judgment of the circuit court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.