# IN THE OREGON TAX COURT

## UNITED AMUSEMENT COMPANY, INC. et al
### *v.*
## DEPARTMENT OF REVENUE
### (TC 1473)

Karol Wyatt Kersh, of Karol Wyatt Kersh & Associates, P.C., Salem, represented plaintiff.

Elizabeth S. Stockdale, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision rendered March 19, 1982.

**CARLISLE B. ROBERTS, Judge.**

The plaintiffs appealed from the Department of Revenue's Order No. ADT 80-1, imposing amusement device taxes upon them under ORS chapter 320 for the tax years 1976, 1977, 1978 and 1979.[1] Two basic issues were presented to the court for adjudication:

(1)   The validity of OAR 150-320.020 to 150-320.070 and the applicability of ORS chapter 320 to the plaintiffs for the years pleaded on account of the "display or operation" by them in this state of "large, noncoin-operated carnival rides," such as ferris wheels, merry-go-rounds, "rock-o-planes" and "octopuses"; and similar devices; and

(2)   Whether and to what extent taxes paid in the years pleaded may lawfully be refunded to the plaintiffs by the state. [This issue was subsequently stipulated.]

ORS chapter 320, relating to a privilege tax imposed upon "music devices" and "amusement devices," was first enacted in 1943. The original act, 1943 Or Laws ch 220, was applicable only to coin-in-the-slot-operated music and amusement devices "of every description or designation." 1955 Or Laws ch 574, § 3, added an annual tax of $25 on "every mechanical amusement device, which is not coin-in-the-slot-operated, and which is designed to be played for amusement" and describes a pinball machine.

---

[1] Plaintiffs pleaded 1980, also, but this year apparently was not brought to the attention of the Department of Revenue.

1957 Or Laws ch 384, § 2, defined a "device," "whether music or amusement, shall include any mechanical, electronic, mechanical-electronic or nonmechanical device" and provided that the words "displayed or operated" were applicable to operations in a private club or fraternal society.

1959 Or Laws ch 155, excluded from the provisions of the act any device licensed under ORS 464.010 and 464.020, relating to poolrooms and bowling alleys, but continued its application, as before, to coin-in-the-slot-operated games or devices, radios and television sets and added "devices designed to furnish pleasure or amusement by providing rides on imitation horses, rocket ships and similar devices * * *." The tax on pinball machines was continued and a catchall clause was added which read: "(h) On every other type of device intended to be played for amusement and not classified under paragraphs (a) to (g) of this subsection, an annual tax of $25 for each device."

As can be seen from the foregoing, for many years the privilege tax was limited to games and musical devices regularly housed in lobbies, restaurants, taverns and social clubs. It was originally restricted to those devices which were activated by a coin deposited in a slot. In later years it included such items even though payment by the customer could be made over the counter. The "devices" contemplated were those "played" or "operated" by the customer. Carnival rides were not included.

In 1975, for the first time, substantial amendments were made to the act, involving ORS 320.005, 320.010, 320.030, 320.040, 320.060, 320.070, and adding a new section relating to registration of the "devices" with the Department of Revenue. Only ORS 320.005 and 320.010 are pertinent to this suit. At this time, the definitions in ORS 320.005 were amended to read:

"As used in this chapter, unless the context requires otherwise:

"(1) A 'music device' means any and all mechanical and electrical devices which render, cause to sound or release music or provide visual entertainment where the same may be heard or seen by one or more public patrons. * * *

"(2) *'Displayed or operated'* means the display of any music or amusement device for use by the public or the operation by the public of such device and shall include those music and amusement devices which are *displayed or operated* by or for the use of members of any private club, lodge, fraternal society or other like organization whose membership is limited to a portion of the public. An *'amusement device'* means any mechanical, electronic, mechanical-electronic or nonmechanical mechanism which is designed for the *amusement of the player or operator* and *is complete in itself* having as its purpose the production or creation *of a game* of skill, amusement, entertainment, or test of strength, including, but not limited to, shuffleboards, coin-operated devices utilizing tables, boards or cases of any size whatever, balls, sticks, cues, pegs or marbles, and whether or not any motivating force involved is furnished by the player or the device." (Emphasis supplied.)

ORS 320.010 was also amended to its present state:

"(1) There hereby is imposed on every music and amusement device displayed or operated in this state, a privilege tax, as specified in this chapter.

"(2) The amount of the privilege tax shall be as follows:

"(a) On each music device an annual tax of $25.

"(b) On each amusement device designed and used solely to provide rides for amusement an annual tax of $25.

"(c) On each amusement device operated upon the payment of or insertion of one or two pennies, an annual tax of $10.

"(d) On every other type of amusement device an annual tax of $50 for each device."

It is clear that, for the purposes of this suit, all impositions of the tax must lie within the definitions of ORS 320.005(2).

After the 1975 amendments became law, the Department of Revenue promulgated a new rule, OAR 150-320.010 (effective July 1, 1976):

"1. Carnival-Type Games, Devices, and Rides. Any music or amusement device which is displayed for use by the public or to be operated by the public is subject to the prvilege tax. This includes *carnival* games, devices and *rides.*" (Emphasis supplied.)

Tax was then imposed upon large carnival rides, designed for outdoor fairs and carnivals, requiring the employment of an operator other than the customer (and subject to policing for safety pursuant to ORS 460.310 *et seq.*).

Pursuant to the defendant's promulgated rule, the plaintiffs allegedly were assessed and have paid the privilege tax in respect to "carnival rides" as follows: 1976, $1,300; 1977, $1,500; 1978, $1,325; 1979, $1,475; and 1980, $1,400.[2] Refund of these payments to plaintiffs is sought on the ground that the imposition by defendant of a privilege tax upon plaintiffs' "large amusement rides" was in error and is outside of the department's power to tax as expressed in ORS chapter 320.

■ The matter turns on legislative intent, as determined by the language of the statute. In the view of the court, ambiguity is created in ORS chapter 320 when an attempt is made by the defendant to apply it to large carnival rides which are necessarily operated by an employee of the owner for reasons of safety and efficiency as well as for profit.

The court first looks to the tax imposition section, ORS 320.010, which begins:

"(1) There hereby is imposed on every music and amusement device displayed or operated in this state, a privilege tax * * *."

Of necessity, the court must then turn to the statute's definition subsections in ORS 320.005, *supra.* Subsection (1), relating to the "music device," is not applicable here. In subsection (2) we find that "[a]n 'amusement device' means any mechanical, electronic, mechanical-electronic or nonmechanical mechanism which is designed for the amusement of the *player* or *operator* and is complete in itself[,] having as its purpose the production or creation of a *game* * * *"; (a game of skill, a game of amusement, a game of entertainment or a test of strength).

These are not apt words to describe a merry-go-round or other large carnival ride. The designation of "device" is inapropos, as it connotes a tool, instrument, implement,

---

[2] Defendant's Answer alleges plaintiffs reported and paid $1,100 in 1978 and $1,400 in 1979.

contrivance or appliance. *(See Rogert's International Thesaurus.)* In common speech, a ticket holder does not "play" a carnival ride, and does not "operate" it; he rides it. Again, in common speech, the carnival ride is not a "game"; it is a "ride." The first sentence of subsection (2) relating to "displayed or operated" can be stripped down for purposes of clarity. We can eliminate "or operated," for reasons expressed above and then retain:

> " 'Displayed * * *' means the display of any * * * amusement device for use by the public * * *."

Except for the use of the ambiguous word "device," this part of the definition can be applied to a carnival ride but an examination of successive amendments of the statute proves the words were used in relation to a "display" or array or gallery of coin-in-the-slot-operated devices which are "amusements" or "games." The statutory history leads to an inference that the words "coin-in-the-slot" subsequently resulted in the tax of small coin-in-the-slot rides for children, with locations in shopping centers and the like.

Continuing in this fashion, we come to the requirement that the "amusement device" be "complete in itself." The commonly understood meaning of that term applies to an object which "possess[es] all necessary parts, items, components, or elements: not lacking anything necessary." *Webster's Third New International Dictionary* 465 (1961). The large carnival rides owned by plaintiffs do not function without a paid operator, who is someone other than the rider. They are not, for this reason, complete in themselves. (This construction does not render the assessments section, ORS 320.010(2)(b), useless, of course. There are rides which meet the definitional requirements; e.g., small coin-in-the-slot rides such as those found in shopping centers and supermarkets. Miniature rockets, horses and automobiles fit the mold.)

Plaintiffs have sought to show that the archives of the legislative tax committees indicate that the drafters of the statute never expressed any thoughts as to large carnival rides and that the words found in ORS 320.010, imposing a tax "on each amusement device designed and used solely to provide rides for amusement," based on past history, would naturally apply to the small "devices" operated by children described

above. The question of carnival rides arose only upon the promulgation of the defendant's 1976 regulation.

■ Such "legislative history" can be misleading. The most desirable method of determining the meaning of any statute, including a definitional section, is by examining the words themselves and, if possible, without reference to extrinsic aids of construction. *Pratum Co-Op Whse. v. Dept. of Rev.,* 6 OTR 130, 136 (1975). Commonly used words should be given their natural, plain and obvious meaning. *Canteen Company of Oregon v. Dept. of Rev.,* 8 OTR 450, 452 (1980).

■ It is a standard rule of statutory construction that where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relationships and to give color and expression to each other. (This is the doctrine of *noscitur a sociis.*) *Eugene Theatre et al. v. Eugene et al.,* 194 Or 603, 243 P2d 1060 (1952). In order to bring the carnival rides within the provisions of the amusement device statute, the word "operator" must be used in two quite different meanings: (a) The customer who "operates" the device, by use of coins, triggers, levers and the like; and (b) the "operator" who is the employee of the entrepreneur, a skilled individual whose services are required because of the multi-customer scope of the "device" and the statutory safety requirements.

■ No question is raised here as to the breadth of the state's power to tax. Apart from certain federal constitutional limitations, the state Legislative Assembly has plenary power to enact taxing and refund statutes as it sees fit. *Schl. Dist. No. 12, Wasco Co. v. Wasco Co.,* 5 OTR 287 (1973) (*aff'd* 270 Or 622, 529 P2d 386 (1974)). A classic statement on this point is to be found in *Lane Co. v. Oregon,* 74 US (Wall) 71, 76-77, 19 L Ed 101, 104-105 (1868).

■ Prior to 1976, this court would have relied on a standard for administrators found in *Gould v. Gould,* 245 US 151, 153, 38 S Ct 53, 62 L Ed 211, 213 (1917):

> "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically

pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. *United States v. Wigglesworth,* 2 Story, 369, Fed. Cas. No. 16,690; *American Net & Twine Co. v. Worthington,* 141 U.S. 468, 474, 35 L. ed. 821, 824, 12 Sup. Ct. Rep. 55; *Benziger v. United States,* 192 U.S. 38, 55, 48 L. ed. 331, 338, 24 Sup. Ct. Rep. 189."

This construction was regularly followed in Oregon. *Ins. Commissioner v. Allstate Ins. Co.,* 221 Or 371, 385, 351 P2d 433, 439 (1960); *Crook v. Curry County,* 206 Or 350, 356, 292 P2d 1080, 1083 (1956); *Portland Pendleton Trans. Co. v. Heltzel,* 197 Or 644, 655, 255 P2d 124, 129 (1953); *Eugene Theatre et al. v. Eugene et al., supra,* 194 Or, at 629, 243 P2d, at 1072 (1952); *Cabell v. Holman,* 144 Or 127, 136, 24 P2d 1, 4 (1933).

However, *Crook v. Curry County, supra,* and *Ins. Commissioner v. Allstate Ins. Co., supra,* were overruled by *Parr v. Dept. of Revenue,* 276 Or 113, 553 P2d 1051 (1976), and it is assumed that the other cases cited in the foregoing paragraph would be superseded as to the same point. The *Parr* case (176 Or, at 117) states:

> "We conclude there should not be separate and different rules of statutory construction for ambiguous tax statutes than for other ambiguous statutes passed by the legislature. It is the legislative intent and purpose that this court strives to determine when faced with ambiguous statutory language, and tax statutes should not be construed in favor of either the taxpayer or the state. Accordingly, *Crook v. Curry County, supra; Ins. Commissioner v. Allstate Ins. Co., supra;* and *Ruth Realty Co. v. Tax Commission, supra,* are overruled wherein they conflict with this decision."

The Supreme Court relied on a rule of statutory construction set out in *Didier v. S.I.A.C.,* 243 Or 460, 465, 414 P2d 325, 327 (1966);

> "When possible, legislation is to be construed so that it will carry out its revealed legislative purpose. If the legislative purpose is unclear from the language of the section under examination, courts are required to give to the section a meaning that comports with common sense and with the statutory scheme as a whole. As Learned Hand once said, speaking of 'enacted law':

" "* * * The duty of ascertaining its meaning is difficult enough at best and one certain way of missing it is by reading it literally, for words are such temperamental beings that the surest way to lose their essence is to take them at their face * * *.' L. Hand, The Spirit of Liberty (Dilliard, 2d ed enl, 1953) at 157.

"Construction should avoid inconsistent and unconscionable results. * * *"

While it is true that, historically, in recognition of administrative expertise, courts carefully weigh the views of an administrative agency concerning the interpretation of a statute with which it deals on a regular basis, nevertheless, an administrative agency must avoid extending its powers beyond those specifically conferred upon it. *Miller v. Employment Division,* 290 Or 285, 289, 620 P2d 1377, 1379 (1980); *U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 550, 542 P2d 900, 906 (1975); *Layman v. State Unemp. Comp. Com.,* 167 Or 379, 401-402, 117 P2d 974, 983 (1941); *idem, Sunshine Dairy v. Peterson et al,* 183 Or 305, 327, 193 P2d 543, 553 (1948).

The court does not wish to appear critical of the Department of Revenue, upon which heavy tasks are imposed. Quite possibly, in the minds of its officers or employees who prepared OAR 150-320.010(1), the statute is clear and unambiguous. However, as stated in *Gouge v. David et al.,* 185 Or 437, 455, 202 P2d 489, 497 (1949):

"* * * The courts hold that even if an act is expressed in clear language, a conclusion may be warranted that an ambiguity exists if literal interpretation will produce an absurd result or one at variance with the policy of the legislation as a whole: *United States v. American Trucking Assn.,* 310 U.S. 534, 84 L. Ed. 1345, 60 S. Ct. 1059; *Fox v. Galloway,* 174 Or. 339, 148 P. 2d 922."

Through its rule, the defendant has created ambiguity by requiring the word "operator" to be used in two different senses.

The court finds that the preponderance of the evidence creates a substantial doubt that the Amusement Device Privilege Tax authorizes imposition of a tax upon large carnival rides. Therefore, the court holds that it does not so provide. Plaintiffs were not lawfully taxed. This construction

comports with the statutory scheme and avoids an unconscionable result.