STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-20

DAIRYLAND INSURANCE CO.

Petitioner

v.                                                    DECISION AND ORDER

STATE TAX ASSESSOR,

Respondent

This matter is before the court on Respondent State Tax Assessor's Motion for Summary Judgment on Dairyland's Rule 80C appeal.[1]

This case involves the denial by State Tax Assessor ("Assessor") of requests for refunds by Dairyland Insurance Co. ("Dairyland") for portions of the Maine Insurance Premiums Tax ("Premiums Tax") paid by Dairyland for tax years 2001-2003 ("Tax Years"). Dairyland filed this 80C petition for review on March 28, 2005, in response to the Assessor's February 28, 2005 final agency action denying Dairyland's request for reconsideration of the Assessor's August 19, 2004 denial of refunds for the Tax Years.

Title 36 M.R.S.A. § 151 governs judicial review of decisions by the Assessor and "provides that the Superior Court 'shall conduct a de novo hearing and make a de novo determination of the merits of the case.'" *Foster v. State Tax Assessor*, 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014; 36 M.R.S.A. § 151. Summary judgment is proper if the citations to

---

[1] Plaintiff's appeal is taken pursuant to 36 M.R.S.A. § 151, which requires a person who wishes to contest a tax assessment to first request reconsideration with the Assessor. The Assessor's reconsideration is an informal review that is not an adjudicatory proceeding. As a result, there is no record for the court to review despite being an appeal of a governmental decision. Therefore, rather than proceeding under M.R.Civ.P. 80C, the court, upon motion, allowed the parties to proceed in this action as under any other civil action.

the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305.

The issue in dispute is whether installment fees for installment payment of premiums should be excluded from taxable "gross direct premiums" pursuant to 36 M.R.S.A. § 2513. Dairyland offers automobile and motorcycle insurance coverage to customers in Maine. During the Tax Years, Dairyland's Maine insured obtained coverage by either (1) paying the full premium outright, or (2) paying for the insurance through installment payments. If a Maine insured chose the installment method of payment, Dairyland charged them an installment fee. In its original returns for the Tax Years, Dairyland included all installment fees as part of its gross direct premium. In 2004, Dairyland filed amended returns for the Tax Years seeking refunds for the portion of taxes it paid related to the installment fees.[2]

Title 36 M.R.S.A. § 2513, as in effect during the Tax Years, imposed a tax as follows:

> Every insurance company or association that does business or collects premiums or assessments . . . shall, for the privilege of doing business in this State, and in addition to any other taxes imposed for such privilege pay a tax upon all gross direct premiums including annuity considerations, whether in cash or otherwise, on contracts written on risks located or resident in the State . . . .

Title 24-A M.R.S.A. § 2403 defines "Premium" as follows:

> "Premium" is the consideration for insurance, by whatever name called. Any "Assessment" or any "Membership", "policy", "survey", "inspection", "service", or similar fee or other charge in consideration for an insurance contract is deemed part of the premium."

---

[2] Dairyland asserts that it only included the installment fees in the taxable category of "gross direct premiums" due to its computer system limitations, which made it difficult to separate the installment fees from the premiums. Dairyland also asserts that it filed amended returns because it researched the issue and concluded installment fees were not subject to taxation.

The Assessor argues that the installment fees that Dairyland charges are (1) part of the consideration paid by Maine insured's in order to obtain and maintain coverage; and, (2) no different from Dairyland's other expenses of providing insurance—all of which are included and taxed as part of "gross direct premiums."[3] The Assessor first points out that the plain language of section 2513 states that a tax is imposed on *gross* direct premiums, not net direct premiums. Therefore, *all* amounts collected from Maine insureds is the amount that is to be taxed. The Assessor supports its argument by referring to various dictionaries and statutory language that define "gross" and "premium" to conclude that "gross direct premiums" means the entire premium without deductions because the definition of "premiums" includes additional fees (the "loading factor") beyond the base cost of the insurance.[4]

The Assessor notes that Dairyland concedes that taxable "gross direct premiums" consist of two components: net premium and the loading factor. Net premium is the true cost of the insurance coverage, while the loading factor is the insurer's expenses of providing insurance, such as operating, management, and administrative expenses. The Assessor points out that the cost of installment fees is the *only* expense that Dairyland does not include in its loading factor. The Assessor argues that no meaningful distinction can be made between the installment fee Dairyland does not include in the loading factor and all of the other expenses that are included.

Further evidence that installment fees are part of the consideration insureds pay for a policy is that a failure on the part of the insured to pay the installment fee results in a cancellation of insurance. This fact, according to the Assessor, inextricably links the

---

[3] The Assessor also advances the argument that Dairyland has historically characterized installment fees as premiums in its regulatory and internal accounting filings with the State.
[4] Dairyland's opposition does not address any of the Assessor's definitions beyond unsupported assertions that they are incorrect.

installment fee to the consideration for the insurance. Boiled down, the Assessor's argument is that not only are the installment fees an administrative cost that should be included in the loading factor, but they can also be seen as consideration for the insurance policy because nonpayment of the fee results in cancellation of the policy.[5]

Finally, the Assessor cites case law from other jurisdictions that have held that service fees for installment plans are part of "gross premiums." *See Allstate Insurance Co. v. State Bd. Of Equalization*, 336 P.2d 961, 967 (Cal. Ct. App. 1959); *Liberty Mutual Ins. Co. v. State Tax Comm'n*, 312 N.E.2d 559 (Mass. 1974); *State Insurance Commissioner v. Allstate Ins. Co.*, 351 P.2d 433 (Or. 1960) *overruled on other grounds, Parr v. Dept. of Rev.*, 553 P.2d 1051 (Or. 1976).[6]

In concluding that an installment payment fee is part of gross premiums, the court in *Allstate Insurance Co. v. State Bd. Of Equalization*, 336 P.2d at 967, stated, "The expense incident to the installment payment does not differ in character from other expenses included in the premium. The entire cost to the policyholder arising out of the issuance and performance of the contract of insurances constitutes the taxable premium." Similarly, the Oregon court in *State Insurance Commissioner v. Allstate Ins. Co.*, 351 P.2d at 436, stated, "We think it is plain . . . that the defendant's attempt to segregate the cost of an installment plan from the other costs of providing insurance is arbitrary and seeks to draw a line where none can be traced. An installment plan, like

---

[5] There seems to be some controversy concerning testimony from Dairyland in a deposition and in its errata changes. It appears that a Dairyland deponent changed / clarified testimony regarding whether a Maine insured can still receive coverage if it refuses to pay installment fees. However, the changes still do not raise a true dispute of material fact because Dairyland only asserts it "does not know" whether a policy would be refused to a person who refuses to pay an installment fee while there is record testimony from a Dairyland agent that testified that a policy would *not* issue. In any event, either refusing to insure at the outset (which the parties dispute to some degree) or canceling after insurance has been issued, for failure to pay the installment fee is evidence of consideration for the policy.

[6] The Assessor also cites by analogy to cases in other jurisdictions which have held various fees, contributions, or costs as included in the definition of "gross premiums." Dairyland argues that these other cases are irrelevant, however, Dairyland fails to dispute the case law presented by the Assessor that is directly on point.

advertising, is an inducement to the customer to buy and as a cost of the business it must be included in the price of the product."

Therefore, according to the Assessor, it should prevail because installment fees can be categorized as "gross direct premiums" not only as consideration for the issuance of the policy, but *also* because they constitute an expense of insurance included as a taxable loading factor.

Dairyland's primary argument is that its installment fees have been mischaracterized by the Assessor and should instead be seen merely as payments for the ability to pay in installments, separate from any actual underlying insurance contract. Dairyland relies on *Stewart Title Guaranty Co. v. State Tax Assessor*, KENSC-AP-04-17 (Me. Super. Ct., Ken. Cty. May 5, 2005) (J. Studstrup) for support.[7] However, as noted by the Assessor, Dairyland's analysis of *Stewart Title* is flawed. *Stewart Title* involved a title insurer whose Maine agents collected title fees and retained 75% of the fees *for themselves* from parties at real estate closings. The reason the agents retained such a high percentage of the fees that were charged is because Stewart Title was unique among title companies in that it *only* dealt with insuring title risks, leaving to the agents the responsibility for performing title searches, exams, and preparing and issuing title reports and policies. The issue was whether the 75% of the fees retained by the agents should be attributed to Stewart Title and included by it as part of its "gross direct premiums." The court held that Stewart Title could only be taxed on monies it actually receives because it would be unfair to tax it for other services for which it receives no benefits.

---

[7] The case is currently on remand from the Law Court on ripeness grounds in order to generate further factual findings without application to this case. 2006 ME 18, 892 A.2d 1162.

Dairyland tries to extrapolate from this case the idea that any fee or payment not *specifically* attributed to insurance or *specifically* received as payment for such insurance falls outside the definition of "gross direct premiums." Dairyland tries to do this by asserting that *Stewart Title* stands for the proposition that "the legislature would not have intended [gross direct premiums] to cover anything other than what the insurer actually received as premiums for the insurance as opposed to incidental charges for title searches, document preparation, etc." *Stewart Title* at 4. However, when that language is put into context, it is apparent that it does not mean that incidental charges should be excluded from the definition of gross direct premiums, only those where a company does not actually perform the service. In this case, it is undisputed that Dairyland performed all of the services and received the installment fee for itself. [8]

Dairyland also cites to a Louisiana case for support for its position that installment fees are separate from insurance. The court in *Blanchard v. Allstate Insurance Co.*, 774 So.2d 1002, 1006 (La. Ct. App. 2000), stated that installment fees are not paid to procure insurance, but for the privilege of paying for it over time. However, this case is also distinguishable because it concerns a state law requiring disclosure of all fees and consideration in quotes to the insured, and not the definition of gross direct premiums for tax purposes. Within the context of public disclosure, the court held that the nature of these fees were such that they did not need to be disclosed as part of a quote to insureds. However, in language that supports the Assessor, the court noted that in proceedings below, "The hearing officer noted that Allstate reduces its installment-fee revenue from the 'Other Acquisition Expenses' in its rate filings with the rating commission, reports its installment-fee revenue as 'Finance and Service Charges Not

---

[8] It can also be inferred that Dairyland receives a benefit by writing business with policyholders financially unable to pay premiums upfront with cash.

Included in Premiums' on its annual statements, *and treats installment fees as premiums for tax purposes but not for other transactions,* such as the calculation of the rebate for unearned premium." *Id.* This quote demonstrates that Louisiana, as many other states do, treats fees differently in its statutes depending on the purpose. For *tax* purposes, Louisiana appears to treat installment fees as part of gross premiums, and for public policy purposes it treats them as administrative costs separately from premiums.

Dairyland also tries to support its characterization of installment fees as distinctly different from insurance by noting that when a payment is received, installment fees are deducted first from any amount owed. Thus, if an insured pays only the prorated amount without including the installment fee, the insured would have an outstanding balance on its premium in the amount of the installment fee. Dairyland tries to use this as evidence that the installment fee is therefore not part of the insurance contract. Dairyland notes that it is incorrect to say that a policy is cancelled because of failure to pay an installment fee because if an insured refuses to pay two months of installment fees (with more than ten dollars outstanding), the contract is deemed cancelled for nonpayment of *premium* since the installment fees had already been taken out (leaving an unpaid premium balance). However, as the Assessor points out, this is an argument over semantics. Regardless of the label, the relevant point is that canceling insurance for failure to pay an installment fee links the installment fee as part of the consideration for the insurance.

Finally, Dairyland asserts that because installment fees can be avoided by paying in a lump sum, they should not be lumped in with other administrative charges in the loading factor that an insured is not able to avoid. Dairyland concedes that the loading factor consists of expenses related to providing insurance, and yet based solely on its own categorization of installment fees, declares they should not be included in the

loading factor. Dairyland not only does not provide any support for this interpretation, it also does so without addressing any of the case law cited by the Assessor indicating that states that have addressed the issue have categorized installment payments as part of gross direct premiums for taxation purposes.

Based on the evidence submitted, the court finds no genuine issue of material fact in dispute. Dairyland has not disputed the Assessor's definition of "gross direct premium," has not cited any case law that contradicts the Assessor's on point cases, has cited to case law that is easily distinguishable, and has presented no justifiable reason for excluding installment fees from all of the other administrative expenses in the loading factor (while conceding that the loading factor is included in the definition of premium). Finally, the fact that Dairyland will cancel a policy when an installment fee is not paid (although categorizing it as a failure to pay the premium) appears to support the Assessor's argument that the installment fee is in reality part of the consideration for the provision of insurance.

The entry will be:

Respondent's motion for summary judgment is GRANTED; judgment for State Tax Assessor.

January 26, 2007

JUSTICE, SUPERIOR COURT

Date Filed ___3/28/05___ ___Kennebec___ Docket No. __AP05-20__
County

Action ___Petition for Review___
80C

## J. MARDEN

| Dairyland Insurance Company | vs. | State Tax Assessor |

Plaintiff's Attorney

Christine B. Worthen, Esq.
Bernard J. Kubetz, Esq.
P.O. Box 1210
80 Exchange Street
Bangor, Maine 04402-1210

Defendant's Attorney

~~Exx Maxyx Rexxxyx xAMCx~~
6 State House Station
Augusta, Maine 04333-0006
~~MixhaxixMxxxexxxxxx~~
Scott W. Boak, AAG

| Date of Entry | |
|---|---|
| 3/28/05 | Petition for Review, filed. s/Worthen, Esq. |
| 3/30/05 | Letter entering appearance, filed. s/Kelly, AAG |
| 4/6/05 | Certified return receipt served upon G. Steven Rowe and State Tax Assessor on 3/25/05 |
| 4/25/05 | Joint Motion for an Order to Specify the Future Course of Proceedings with Proposed Order, filed. |
| 4/26/05 | ORDER SPECIFYING FUTURE COURSE OF PROCEEDINGS, Marden, J. (discovery to be complete by December 15, 2005, motions to be file within 60 days of discovery deadline) Copies mailed to attys of record. |
| 6/1/05 | Notification of Discovery Service, filed. s/Kelly, AAG 1).State Tax Assessor's First Request for Production of Documents by Petitioner. 2).State Tax Assessor's First Set of Interrogatories to Petitioner served on Christine Burke Worthen, Esq. on 5/31/05 |
| 7/1/05 | Notification of Discovery Service, filed. s/Burke, Esq. Petitioner's Response to First Set of Interrogatories and Petitioners' Response to First Request for Production of Documents served on E. Mary Kelly, Esq. on 6/30/05 |
| 7/7/05 | Notification of Discovery Service, filed. s/Kelly, AAG State tax Assessor's Response to Petitioner's First Request for Production of Documents served on Christine Burke Worthen, Esq. on 7/5/05 |
| 10/5/05 | Notice of Withdrawal and Appearance of Counsel, filed. s/Kelly, AAG s/Miller, AAG |
| 11-10-05 | Received and filed by AAG Michael Miller Atty for State Tax Assessor Notification of Discovery Service the Notice of Depostion of Dairyland Insurance Company served on Christine Burke Worthen Esq 11/08/05 |
| 12-05-05 | Received and filed by AAG Michael Miller, ATtorney for State Tax ASsessor a Notification of Discovery Service served on Christine Burke Worthen, Esq. Papers included a Notice of Depositions of Dixon Associates, **CONT. OVER** |