Argued June 2; reversed July 18, 1933

## IN RE FAILING'S ESTATE
## CABELL *v.* HOLMAN
(24 P. (2d) 1)

*Edgar Freed* and *Charles E. McCulloch,* both of Portland (Simon, Gearin, Humphreys & Freed, Carey, Hart, Spencer & McCulloch, Henry F. Cabell, and Ivan F. Phipps, all of Portland, on the brief), for appellants.

*Dean H. Dickinson* and *David S. Husted,* both of Portland (I. H. Van Winkle, Attorney General, on the brief), for respondent.

BELT, J. This is an appeal from an order determining the amount of inheritance tax due the state from the estate of Henrietta Ellison Failing who died testate in 1931, leaving a net estate of $1,402,114.73. In her will she bequeathed $100,000 to The Portland Art Museum, a charitable institution, and made specific bequests of $100,000 to her nephew Henry F. Cabell and $66,464.50 to her sister Mary F. Failing. The residue of her estate was devised to trustees with directions to pay the entire net income thereof to her sister 69 years of age for her lifetime and at her death the trust estate was to be turned over to Henry F. Cabell.

There are two questions presented: (1) Should the charitable bequest of $100,000 to The Portland Art Museum be deducted from the net value of the estate before computing the inheritance tax? (2) Should the present worth of the reversionary interest of Henry F. Cabell be determined by the Actuaries' Combined Experience Tables or by deducting the value of the life

estate from the value of the residuary estate? These two questions will be considered in the order stated.

The executors of the estate, appellants herein, contend that the tax should be computed as follows:

| | | |
|---|---:|---:|
| Net Estate | $1,402,114.73 | |
| Less: Bequest to The Portland Art Association (Exempt from taxation) | 100,000.00 | |
| Balance subject to tax | 1,302,114.73 | |
| Tax thereon | | $ 82,736.47 |
| Additional collateral tax on interest of Mary Forbush Failing, sister: | | |
| Specific bequest and devise | 66,464.50 | |
| Present value of life estate | 300,402.66 | |
| Total | 366,867.16 | |
| Tax thereon | | 51,190.07 |
| Additional collateral tax on interest of Henry Failing Cabell, nephew: | | |
| Specific bequest | 100,000.00 | |
| Present value of reversionary interest | 803,120.49 | |
| Total | $ 903,120.49 | |
| Tax thereon | | 131,628.07 |
| TOTAL TAX | | $265,554.61 |

The state treasurer asserts, however, that the tax on the net estate amounts to $86,122.43, instead of $82,736.47, and that the tax on the specific bequest and

the reversionary interest of Henry Failing Cabell amounts to $136,447.13, instead of $131,628.07. Thus the amount of tax in controversy is $8,205.02.

The state treasurer contends that the charitable bequest to The Portland Art Museum should not be deducted from the net estate before computing the tax thereon, but that there should be credited against such tax the proportion thereof which the charitable bequest bears to the net estate. More specifically, in computing the tax on the net estate, the state treasurer found there was due the sum of $92,736.47. He thereupon credited against such tax the sum of $6,614.04, being the amount The Portland Art Museum would be obliged to pay if it were subject to tax, leaving a balance of $86,122.43 charged against Mary F. Failing and Henry F. Cabell in the proportion of their respective legacies to the net estate.

In determining whether a charitable bequest should be deducted from the net estate, consideration must be given to the following statutory provision. Section 10-601, Oregon Code 1930, as amended by chapter 332, Laws of Oregon, 1931, so far as pertinent herein, provides as follows:

"*All property* within the jurisdiction of the state * * * *which shall pass or vest by dower, curtesy, will * * * shall be and is subject to tax at the rate hereinafter specified in section* 11-603 [*10-603*], to be paid to the treasurer of the state for the use of the state; * * * provided, however, *that devises, bequests, legacies and gifts to benevolent, charitable or educational institutions,* societies, associations or corporations organized or existing within this state and actually engaged in this state in carrying out the objects and purposes for which so organized or existing * * * shall *be exempt from taxation under the provisions of this act;* and provided further, that there

shall be exempted from taxation under this act all proceeds of policies and contracts of life insurance taken out at any time on the life of the decedent and payable to a beneficiary or beneficiaries other than the estate or the executor or administrator of the estate of the deceased insured, whether payable directly to or through a trustee, immediately or at future dates * * *.'' (Italics ours.)

Section 10-603, Oregon Code 1930, prescribes the rate of inheritance tax. This section is divided into three paragraphs. The first paragraph prescribes the rates to be imposed upon the net estate. It is the only tax imposed where the estate passes exclusively to or for the use of any grandfather, grandmother, father, mother, husband, wife, child or any lineal descendant of the deceased. The second paragraph of the section imposes additional inheritance taxes upon any inheritance, devise, bequest, legacy or gift passing to any brother, sister, uncle, aunt, niece, nephew or lineal descendant of the same. The third paragraph imposes additional inheritance taxes in all cases not covered by paragraph 2. In the instant case we are concerned with the application of the first two paragraphs of the section of the statute.

In our opinion, section 10-601, as amended, which defines the property subject to an inheritance tax, is plain and explicit in its terms. There is slight need to resort to rules of statutory construction. It is difficult to conceive how the $100,000 bequest to The Portland Art Museum can be considered a part of the net taxable estate without doing violence to the language of the statute that such property ''shall be exempt from taxation under the provisions of this act''. See Opinions of Attorney-General 1920-1922, p. 99, and 1926-1928, p. 115. It will be noted that the proviso with ref-

erence to the exemption is a part of the sentence defining property subject to the tax. It is also observed that, in defining the property subject to tax, the legislature excluded the proceeds of life insurance policies other than those payable to an estate. True, the proceeds of life insurance policies payable to a certain beneficiary are not a part of the taxable estate since the proceeds are not obtained by virtue of inheritance or bequest but by reason of contract and, therefore, such provision might well be considered superfluous. Nevertheless, we think it tends to show the plain intent of the legislature that charitable bequests should be excluded in the computation, which, after all, is in keeping with the policy of the law to encourage charitable disposition of property.

The inheritance tax law was enacted in 1903. For a period of about twenty-five years it had been the practice of administrative officers in this state to deduct charitable bequests from the net estate in the computation of the tax. A different rule was followed by the auditors of the tax department after 1929. We fail to see wherein *Re Estate of Heck,* 120 Or. 80 (250 P. 735), affords any reasonable basis for change in the practice. In that case no charitable bequest was involved and the question before the court pertained to the constitutionality of the inheritance tax law. It is true this court therein said that the ''amount of tax which a beneficiary is obliged to pay depends upon the net value of the estate and his proportionate distributive share''. However, what was said must be read in the light of the facts before the court for consideration. In the instant case, where a charitable bequest is involved, it would be more accurate to say that a beneficiary is obliged to pay his proportionate share of the

tax upon the net *taxable* estate. While the tax provided by our statute has some of the incidents of an estate tax, it is intrinsically an inheritance tax, since it is based, not upon the right to transfer property, but upon the right to receive it: *In re Clark's Estate,* 100 Or. 20 (195 P. 370); *In re Inman's Estate,* 101 Or. 182 (199 P. 615, 16 A. L. R. 675).

If the amount of the charitable bequest is included in computing the tax, the tax which the other beneficiaries must pay is thereby increased, and, therefore, the gift to charity is not exempted from taxation, even though there is deducted from the total tax that proportion thereof which the amount of the charitable bequest bears to the total net estate. Take the case of a testator with a net estate of $500,000 who bequeathed $489,000 to charity and the sum of $11,000 to his son. In such a case, if the tax be computed according to the method contended for by respondent, the son will pay an inheritance tax of $385, whereas, if the charitable bequest be deducted from the net estate before computation of the tax, he will pay an inheritance tax of $10. In arguing against the contention of appellants, counsel for the state treasurer point to an illustrative case where a testator with an estate of $500,000 bequeathed $250,000 to his son and the remainder to charity. It is asserted that according to appellants' contention, the son would pay an inheritance tax of $6,025, whereas, if the same net estate were divided equally between two sons without any charitable bequest, each son would pay a tax of $8,762.50. Therefore, it is argued, if the method of appellants be followed, it would result in illegal discrimination between sons who receive the same amount of legacy. The fallacy of this argument is that, in the illustrative cases given by the respond-

ent, the sons do not come within the same classification. In the one case there is a charitable bequest and in the other there is none. In the classification for taxation purposes, the legislature is not limited to the three factors enumerated by respondent, viz, (1) relationship of beneficiary to the testator; (2) amount of legacy; and (3) amount of net estate for distribution: *Watson v. State Comptroller,* 254 U. S. 122 (41 S. Ct. 43, 65 L. Ed. 170). The tax, if computed according to the contention of appellants, would be uniform and equal upon those beneficiaries coming within the same class, and that is all the constitution requires. *In re Estate of Heck,* supra; *Stebbins v. Riley,* 268 U. S. 137 (45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454). We conclude that, in the computation of the tax, the charitable bequest should be first deducted from the net estate.

■■ The second question is: What is the proper method under the statutes of this state, to determine the present worth of a vested remainder for inheritance tax purposes? Section 10-628, Oregon Code 1930, provides:

"* * * The value of every future or contingent or limited estate, income, interest, or annuity dependent upon any life or lives in being shall be determined by the rules or standards of mortality, and of value commonly used by actuaries' combined experience tables, except that the rates of interest on computing the present value of all future and contingent interests or estates shall be four per centum per annum interest."

Under section 10-634, Oregon Code 1930, it is the duty of the secretary of state to "furnish, for the use of the courts and appraisers throughout the state, tables showing the average expectancy of life, and the value of annuities of life and term estates, and the present worth or value of remainders and reversions,

as prescribed in section  *  *  *  10-628''. There is no dispute as to the present worth of the life estate of Mary Forbush Failing. By using the Actuaries' Combined Experience Tables, it was ascertained to be $300,-402.66. Although such tables have a column for determining the present worth of a reversionary interest it was not used by the state treasurer who found the value of the vested remainder ($835,247.57) by deducting the value of the life estate ($300,402.66) from the value of the residuary estate ($1,135,650.23). According to the Actuaries' Tables the present worth of the reversionary interest in question is $803,120.49. Thus it appears there is a difference of $32,127.08 in the valuation of the nephew's reversionary interest.

Since the residuary estate consists of the life estate and the vested remainder, it is quite plausibly argued that the two parts of the residuary estate must equal the total valuation thereof. If the valuation of the life interest and the vested remainder are each figured by using the Actuaries' Combined Experience Tables, the two valuations added together lack $32,127.08 of equalling the value of the residuary estate. Hence it is urged by respondent that it is illogical to use the Actuaries' Tables to ascertain the present worth of the reversionary interest. Such argument would be unanswerable if it were not for the fact that the valuation of future estates can only be approximated. Life is uncertain. As stated in Blakemore and Bancroft Inheritance Taxes, section 290:

''The tax upon the life estate added to the estate in remainder need not necessarily equal exactly the tax on the principal.''

Even if it be conceded that the result obtained by the use of the Actuaries' Combined Experience Tables

is illogical, it is sufficient to say that if the statute specifically directs the tax to be computed in that manner, it must be followed. It is apparent that, in the instant case, the state treasurer, in computation of the tax relative to future estates, only partially followed the statute. While it is true that most of the authorities cited support the contention of the respondent that the value of the life estate is to be deducted from the total value of the residuary estate to determine the remainder, it must be borne in mind that these cases are based upon statutes which specifically direct such method of computation. The statute of this state is unlike any which we have been able to find in other jurisdictions in that it specifically provides that all future estates must be determined by the use of the Actuaries' Combined Experience Tables. The legislative intent is particularly expressed in section 10-634, wherein the secretary of state is required to furnish tables showing the "present worth or value of remainders and reversions". If there were any reasonable doubt as to the meaning of the statute, since it is not a general tax, but a tax upon particular classes of individuals, it should be resolved in favor of the taxpayer: *United States v. Merriam*, 263 U. S. 179 (44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547).

Administrative officers of this state for a period of over twenty-five years have placed the same construction upon the statutes that we have given it relative to the computation of the inheritance tax on remainders. This is evidenced by the various official pamphlets published by the state treasurer, wherein illustrative cases are given showing the computation of tax on reversionary interests in keeping with the method used by appellants. It was not until 1930 that

the state treasurer in his official pamphlet set forth in the explanatory notes to the inheritance tax laws an illustrative case showing the method of computation which respondent now supports, although it seems that, in actual practice, the auditing department for the last several years had not followed, in most instances, the rule as stated in the former official pamphlets.

Regardless of the merits of the different methods of computation in fixing the value of future estates, we are compelled to give force and effect to the plain and explicit language of the statute. We therefore hold that the present value of Henry Failing Cabell's reversionary interest in the residuary estate is found by multiplying the residuary estate ($1,135,650.23) by .70719, the reversion or present value of $1.00 due at the end of the year of death of a person 69 years of age, as provided in the Actuaries' Combined Experience Tables, amounting to $803,120.49.

The executors of the estate paid to the state of Oregon the sum of $265,554.61, less a discount of five per cent allowed by statute, which was the full amount of the tax due computed in accordance with the method herein approved.

The order of the lower court directing the executors to pay an additional inheritance tax of $8,205.02 is reversed.

ROSSMAN, CAMPBELL, and KELLY, JJ., concur.