Argued December 9, 1959, affirmed June 2, 1960

RUTH REALTY COMPANY *v.* STATE TAX
COMMISSION

353 P. 2d 524

*Donald H. Burnett,* Assistant Attorney General,
Salem, argued the cause for appellants. On the briefs
were Robert Y. Thornton, Attorney General, Salem,
Walter J. Apley, Assistant Attorney General, Salem,
and Carlisle B. Roberts, Assistant Attorney General,
Salem.

*Thomas P. Deering,* Portland, argued the cause for respondent. With him on the brief were Frederick H. Torp, Portland, and Hart, Spencer, McCulloch, Rockwood and Davies, Portland.

Before McAllister, Chief Justice, and Warner, Sloan and King, Justices.

WARNER, J.

This is an appeal by the State Tax Commission from a decree of the Circuit Court of Multnomah County in favor of plaintiff, Ruth Realty Company, an Oregon corporation (hereinafter called Ruth), having as its principal business function the promotion of railway traffic for its parent corporation, the Spokane, Portland and Seattle Railway Company.

The tax problem presented arises out of sales by Ruth of two separate tracts of timber land (one known as the Yerrek Tract and the other known as the Western Tract) each held by Ruth prior to 1935 under separate contracts with Delta Land & Timber Company (hereinafter called Delta). The contracts were substantially identical and the legal and factual issues raised by the resales made in 1945 and 1949 are the same.

Ruth acquired the properties in 1924 and 1930. Under its agreement with Delta, Ruth sold the timber land to Delta for a purchase price equal to cost, plus all taxes, assessments and other charges paid by Ruth to protect the property during the life of the agreement. Delta was allowed cutting rights on the timber and obligated itself to purchase the tracts from plaintiff not later than November 5, 1934, but these cutting rights were never exercised, and in 1935 Delta's trustee in bankruptcy rejected the contracts with plaintiff.

Ruth held the property until resale of the Yerrek Tract in 1945 and the Western Tract in 1949.

Because of the identity of issues as to the relative merits of the separate computations of tax as made by each party pertaining to the taxes due on the sale of the Yerrek Tract in 1945, the parties agreed that the conclusion reached with reference to the sale of the Yerrek Tract should be dispositive of the issue as to the tax accruing from the sale of the Western Tract in 1949.

After selling the Yerrek Tract, plaintiff reported its gain from the sale on its Oregon excise tax return. This gain was computed by subtracting from the sales price plaintiff's original initial cost, plus amounts actually expended over the prior years for carrying charges in the nature of interest, real property taxes and fire patrol assessments. The Commission contends that the only allowable basis is the original cost of the property and that the carrying charges should be excluded in computing the gain on the sale.

The issue is better illustrated by the use of the figures involved in the sale of the Yerrek Tract made in 1945 to the Oregon-American Lumber Corporation and as each party computes the resulting tax due. These are as follows:

Ruth's Contention:

| | |
|---|---:|
| Cost | $1,258,320.00 |
| Carrying Charges | 158,773.07 |
| Basis for determining taxable gain | $1,417,093.07 |
| Sale Price | 1,426,540.50 |
| Gain | 9,447.43 |
| Tax | 755.79 |

Commission's Contention:

| | |
|---|---|
| Cost | $1,258,320.00 |
| Carrying Charges | (not added) |
| Basis for determining taxable gain | $1,258,320.00 |
| Sale Price | 1,426,540.50 |
| Gain | 168,220.50 |
| Tax | 13,457.64 |

To state the issue in another way, the question depends upon whether or not the carrying charges, as disclosed by plaintiff's position, above illustrated, can properly be capitalized or whether the carrying charges should have been claimed by Ruth as deductions in computing Ruth's income for each of the years in which such charges were paid. It is the finding of the circuit court that Ruth properly capitalized the charges that prompts the Commission's appeal.

The applicable provisions of the Oregon Corporation Excise Tax which we are called upon to construe were originally enacted as ch 489, § 6(c) (1) (A), Oregon Laws 1939, and thereafter codified as § 110-1512(c) (1) (A), OCLA,[1] and later as ORS 317.220(2) (a).

The Commission argues that this section does not allow the capitalization of property taxes and other carrying charges. Its argument rests heavily upon a decision of the federal Court of Appeals (interpret-

---

[1] "(c) The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis * * * adjusted as hereinafter provided.

"(1) Proper adjustment in respect of the property shall in all cases be made:

"(A) For expenditures, receipts, losses or other items, properly chargeable to capital account, but no such adjustment shall be made in respect to items for which deductions have been taken by the taxpayer on its tax returns for the current or prior years."

ing a provision in the federal Internal Revenue Code similar to § 110-1512(c) (1), supra): *Central Real Estate Co. v. Commissioner,* 47 F2d 1036 (5th Cir 1931).

Ruth relies with equal confidence upon later decisions of the federal Tax Court: *Ernest A. Jackson v. Commissioner,* 9 TC 307 (1947) and *Warner Mountains Lumber Co. v. Commissioner,* 9 TC 1171 (1947).

Before proceeding further, we observe that both parties depend solely on federal decisions interpreting sections of the U. S. Internal Revenue Code in support of their respective positions here. The propriety, and to a great measure the necessity, for so doing is made evident by the historical evolution of Oregon's Corporation Excise Tax Code and particularly by the close identity in pattern between Oregon Laws 1939, supra, and the sections of the federal code to which we later make reference. It appears over the years to have been the legislative intent in this state to simplify demands on taxpayers by bringing our income and excise tax laws in substantial conformity with corresponding provisions of the federal law when such could be accomplished without sacrifice to legislative independence and yet retain certain distinct and different features from the federal code. This tendency to harmonize appears particularly true in the area where the laws involve methods of accounting relating to similar transactions subject to tax by both state and federal authority. And we entertain no doubt that decisions of federal courts touching upon matters in tax areas common to the laws of each government are accorded a serious and persuasive consideration by the state legislature in order to attain such a harmony of construction for the benefit of the

taxpayer when it can be done without sacrifice to the overall tax objectives of the state.

When we are confronted with tax questions, we confess that not infrequently we find ourselves in our initial approach confounded with the same sense of confusion so aptly described by Judge Learned Hand.[2]

In the instant matter, this confusion is more readily dissipated by having at hand, as a valuable aid to our own conclusions, the able and carefully analytic opinion of the learned trial judge who very apparently gave the present problem long and serious consideration before announcing his final judgment. Our own research and study of the record gives confirmation to his reasoning and the result which he achieved. Therefore, that which immediately follows, while not a literal reprint of that opinion, is a substantial restatement of the major portion of Judge Oppenheimer's decision, which we approve and adopt as our own.

We have already noticed that Ruth asserts that recent decisions of the Tax Court of the United States, permitting capitalization should control and that the holding of an earlier federal case to the contrary was in error.

As supportive of its position, Ruth also relies on

---

[2]

"* * * In my own case the words of such an act as the Income Tax, * * * merely dance before my eyes in a meaningless procession; cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of—leave in my mind only a confused sense of some vitally important, but successfully concealed, purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time. I know that these monsters are the result of fabulous industry and ingenuity, plugging up this hole and casting out that net, against all possible evasion; yet at times I cannot help recalling a saying of William James about certain passages of Hegel: that they were no doubt written with a passion of rationality; but that one cannot help wondering whether to the reader they have any significance save that the words are strung together with syntactical correctness. * * *" (57 Yale Law Jrnl, 167, 169 (1947).

Congressional House Report No. 179,[3] which is set out in the footnote below and tendered on what subsequently became § 202(b) (1) of Int Rev Code of 1924 (see footnote 4, infra). This report embodies what Ruth terms the dictates of "sound accounting practices."

The Commission urges　*　*　*　"that adjustment is to be made under § 110-1512 (c) (1), OCLA, supra, for items which are not deductible under § 110-1509(a), OCLA (ORS 317.330(1), and these are items which add to the value of the property."

In effect, the Commission contends that the carrying charges in question can only be added to the cost of the property when charges of that character "add to the value of the property," which position the Commission represents as correct in light of § 110-1509(a), OCLA, supra, and by virtue of the holding in the case of *Central Real Estate Co. v. Commissioner,* supra (47 F2d 1036).

The original federal act (Int Rev Code of 1924, § 202(b) (1)[4] was substantially like the 1939 Oregon

---

[3]

HR No. 179, 68th Cong, 1st Sess 12 (1924): "There is no provision in the existing law which corresponds to subdivision (b), but the rule laid down therein is substantially the same as the construction placed upon existing law by the Treasury Department. It provides that in computing gain or loss from the sale or other disposition of property the cost or other basis of the property (and in the appropriate case the fair market value as of March 1, 1913) shall be increased by the amount of items properly chargeable to capital account and decreased by the depreciation and similar deductions allowed with respect to the property. Under this provision capital charges, such as imrovements, betterments, and *carrying charges, such as taxes on unproductive property,* are to be added to the cost of the property in determining the gain or loss from its subsequent sale, and items such as depreciation and obsolescence previously allowed with respect to the property are to be subtracted from the cost of the property in determining the gain or loss from its subsequent sale." (Emphasis supplied.)

[4]

Int Rev Code 1924, § 202(b): "In computing the amount of gain or loss under subdivision (a) proper adjustment shall be made for (1) any expenditure properly chargeable to capital account, * * *."

Act from 1924 to 1932, with the exception of a provision as to deductions.

In 1931 the Central Real Estate Co. case, supra, was decided and as a direct consequence, in 1932 Congress quickly amended the Federal Act of 1924.

The Commission maintains that when the Oregon Act was passed in 1939, it was with the knowledge of the 1932 federal amendment and the holding in the Central Real Estate Co. case, and, therefore, if the Oregon legislature had not intended to adopt the conclusion in the Central Real Estate Co. case, it would have employed language similar to the 1932 federal amendment.

Ruth insists that the 1932 federal amendment was enacted to evidence a congressional declaration that the Central Real Estate Co. decision erroneously interpreted the federal act and was contrary to the intent of Congress, as evidenced by House Report No. 179, supra (Footnote 3).

Ruth also maintains that certain Tax Court decisions subsequent to the Central Real Estate Co. case demonstrate this.

It is fair to say that the Central Real Estate Co. case supports the position of the Commission. However, further analysis is required before that holding can be said to be decisive in the case at bar.

Section 110-1512(c) (1) (A), OCLA, supra, expressly states that items "properly chargeable to capital account" can be considered, but not, however, as to items for which deductions have been taken in previous tax returns.

The 1932 federal amendment (Int Rev Code of

1932, § 113(b) (1) (A)[5] refers to expenditures "properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property," but the same shall not be so considered when the taxpayer has taken the same deductions in determining net income in the taxable year or prior taxable years.

Reference is now made to authorities cited by Ruth to support its position and to repel the holding or influence of the Central Real Estate Co. case, supra (47 F2d 1036).

The Tax Court in referring to the controversy in the Jackson case, 9 TC 307 (1947), supra, at page 310, stated:

"* * * This [controversy] depends solely on whether carrying charges on a building pending completion, incurred many years prior to the distribution, were properly charged to capital account, as the corporation actually treated them at the time, or, as petitioners now contend, should have been charged to income, * * *."

And, at page 313, the Tax Court observed:

"* * * But once we ascertain that the charges are correctly capitalized, the inference must follow that they could not also be income items. * * *"

The history under the federal act was stated by

---

[5]

Int Rev Code 1932, § 113(b): "Adjusted Basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) General rule. Proper adjustment in respect of the property shall in all cases be made—

"(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years; * * *."

the Tax Court in *Jackson v. Commissioner,* supra, as follows:

> "As a matter of history, the capitalization of these expenses accords with the legislative and administrative interpretation of the law for over twenty years, with an interval of only about a year during which nothing whatever of any relevance to the present controversy occurred. The regulations * * * approved such treatment, with the latter regulation, * * * calling for a different approach only 'where the taxpayer has elected to deduct carrying charges in computing net income * * *.' In August 1931, bowing to the contrary view expressed in a dictum in *Central Real Estate Co. v. Commissioner,* respondent reversed his position, but this was promptly withdrawn when in the Revenue Act of 1932 Congress unequivocally reverted to the original approach." (9 TC at 310)

We turn now to *Warner Mountains Lumber Company v. Commissioner,* 9 TC 1171, supra, decided in 1947. Although the period involved was prior to the 1932 federal amendment, the principal issue was whether or not the Commissioner erred in failing to allow capitalization of certain items consisting of carrying charges on a tract of timber in the state of Oregon and deductions for depreciation and depletion.

In Warner Mountains Lumber Company, supra, we find that in December of 1923 a syndicate of nine individuals was organized to purchase an option pertaining to timber in Lake County, Oregon, expecting to make a quick profit, but had to purchase the same in 1930 for $800,000.

One of the points in Warner Mountains Lumber Company, supra, is expressed at page 1174 in this manner:

> "Thus, one question to be determined in this

case is, Should the syndicate or corporation have capitalized any of the items here in controversy as a part of the cost or basis of the timber which the petitioner sold during the taxable years 1940 through 1943. * * *"

In the Warner Mountains Lumber Company opinion, the various items sought to be added to capital are discussed. The court then refers to other expenditures which "consist of * * * local taxes, cost of fire protection and care * * *. The syndicate never deducted those on any returns and, therefore, the right to charge them to capital account is claimed, * * *." (9 TC at 1175)

The court noted that the Commissioner in that case argued that the items in question may or may not be capitalized "depending upon the law and regulations applicable to the year in which the expenditures were made or incurred." The Tax Court opinion proceeds as follows:

"* * * *There was some confusion* in the decisions and regulations for a few years. See *Ernest A. Jackson,* 9 TC 307, in which the history of the treatment of carrying charges was reviewed. The petitioner argues that the provisions of the Internal Revenue Code mentioned above are controlling. The conclusion was reached in the *Jackson* case that the Congressional purpose *was always the same, and later enactments, beginning with the 1932 Act authorizing the capitalization of carrying charges on unproductive property, were merely for the purpose of clarification.* Therefore, the question here need not be complicated by the vacillation which occurred prior to the 1932 Act.

"* * * Although the meaning of 'carrying charges' is not defined, nevertheless, it is clear that taxes are included. The Commissioner has not suggested any valid reason why the local taxes

* * * should not be capitalized. Another expenditure directly related to carrying the property was * * * paid for fire protection and care. That item may also be capitalized as a carrying charge." (Emphasis supplied.) *Warner Mountains Lumber Company v. Commissioner,* supra (9 TC at 1176).

It appears that the Commission does not question that certain "carrying charges" may fall within the purview of items properly chargeable to capital account as declared in § 110-1512(c) (1), OCLA, supra.

In short, the Commission maintains, as before observed, that in order for the charges to be added to the capital account, said charges must enhance the value of the property in conformity with the holding in the Central Real Estate Co. case.

As noted in the Jackson case, supra, carrying charges such as those involved in the case at bar were allowed by the Commissioner under the federal Internal Revenue Act until the decision made in the Central Real Estate Co. case. But such allowances again became the order of the day after and by authority of the federal amendment of 1932.

It is true that the Oregon Act of 1939 does not make any specific reference to deductions or adjustment for taxes and carrying charges. However, we do not think this means that under the Oregon Act of that year, reading: "Proper adjustment in respect of the property shall in all cases be made: For expenditures * * * or other items, properly chargeable to capital account," if taxes and the like are properly chargeable to capital account, that the same cannot be allowed because there has not been a specific mention of those particular items.

We note again that the 1939 Oregon amendment

states that such items cannot be chargeable to capital account in respect of charges for which deductions have been taken by the taxpayer on his tax return for the current or prior years. That provision alone implies that the taxpayer has an option to charge a proper item to capital account or treat it as a deduction in his annual tax return.

Assuming that the Central Real Estate Co. case, supra, holds as the Commission contends, it is not necessarily binding on us unless its reasoning seems more cogent and persuasive than found in decisions made by the Tax Court.

Disregarding for the moment authorities touching on the problem here involved and treating it as one of first impression, we present the following hypothetical situation: Let us assume an individual acquires unimproved and unproductive property and the purchaser is required to carry his holding for a substantial number of years, paying taxes and other expenses which were required by law to be paid before a purchaser is found.

Assume further that the owner of the property only wants to be made whole and does not seek any gain or profit. Under such a situation it seems to us that the owner would figure his actual investment outlay; that is, his purchase cost, his payment of taxes and any other expense incident to the ownership of said property during the years prior to sale and the sum total should be treated as the cost of said property to the owner by virtue of the purchase made.

If the Central Real Estate Co. case, supra, is followed, as the Commission insists, it would appear that a taxpayer who had unimproved property and no income could never receive any consideration from a tax standpoint. Having no income, the taxpayer could

not deduct the charges as an expense from year to year; and inasmuch as these charges did not enhance the value of the property, it could not be charged to capital.

Further, it might be urged under the assumption that if such charges enhanced the value of the property they would be a capital improvement and, therefore, the whole charge could not be deducted in any given year but would have to be amortized over a number of years. It seems incongruous, however, that the statute at any time should refer to carrying charges and then contend that such phraseology means only such expenditures as enhance the value of the corpus.

It is our conclusion that taxes and fire patrol paid by Ruth on unproductive property are proper items to be added to the capital account in this case.

This Ruth has consistently done throughout the years. It did not shift positions. It was not an afterthought. Ruth was burdened with these charges by virtue of the default of Delta.

Had there been income to Ruth irrespective of the unproductive property or otherwise, Ruth had the option or election to charge the items in computing its income tax return.

The conclusion here reached finds support in the statement from the Jackson case, supra (9 TC at 312), reading as follows:

"* * * The fact is that historically, legally, practically, and from the standpoint of accounting theory, the capitalization of these expenses by the corporation has the more compelling and reasonable support."

Both parties made reference to the 1953 amendment to the Oregon Corporation Excise Tax law (ch 385, Oregon Laws 1953, now ORS 317.300), as did the

court below, and which concluded, as do we, that that amendment clearly indicates that the legislature did not intend thereby to preclude proper carrying charges from being capitalized.

In supplement to the foregoing conclusion garnered from the opinion of the trial judge, we add the following, which, in our opinion, additionally fortify the judgment of the circuit court.

As observed above, the Central Real Estate Co. case advanced by the Commission is a holding of the federal Fifth Circuit Court of Appeals and diametrically opposed in reasoning and result to that reached by the decisions of the federal Tax Court in 1947 as annunciated in the Jackson and Warner Mountains Lumber Company cases, supra.

Conventional regard for the relative importance of opinions emanating from the federal courts of appeal and a federal court constituted solely for the disposition of a special category of litigation might incline us to an acceptance of the Central Real Estate Co. case ruling in preference to the decisions of the Tax Court. But under *Dobson v. Commissioner,* 320 US 489, 88 L ed 248, 254, 64 S Ct 239 (1943), a tax case wherein the Supreme Court affirms a decision of the Tax Court which had been reversed by the Circuit Court of Appeals for the Eighth Circuit, the Tax Court and its opinions attain a new position of greater dignity and stature in the hierarchy of the federal judicial system. There, Mr. Justice Jackson, speaking for a unanimous court, observes:

> "The [tax] court is independent, and its neutrality is not clouded by prosecuting duties. Its procedures assure fair hearings. Its deliberations are evidenced by careful opinions. All guides to judgment available to judges are habitually consulted and respected. It has established a tradition of

freedom from bias and pressures. It deals with a subject that is highly specialized and so complex as to be the despair of judges. It is relatively better staffed for its task than is the judiciary. Its members not infrequently bring to their task long legislative or administrative experience in their subject. The volume of tax matters flowing through the Tax Court keeps its members abreast of changing statutes, regulations, and Bureau practices, informed as to the background of controversies and aware of the impact of their decisions on both Treasury and taxpayer. Individual cases are disposed of wholly on records publicly made, in adversary proceedings, and the court has no responsibility for previous handling. * * *"

We, therefore, have no hesitancy when there is a judicial stalemate, as here, between two federal courts of standing presenting a choice of the proper accounting procedure to be employed in the computation of a given tax in accepting the method approved by the Tax Court as being the more persuasive than an opinion to the same basic subject from the Circuit Court of Appeals.

By our adherence to the opinions in *Ernest A. Jackson v. Commissioner,* supra (9 TC 307), and *Warner Mountains Lumber Company v. Commissioner,* supra (9 TC 1171), in preference to the decision in *Central Real Estate Co. v. Commissioner,* supra (47 F2d 1036), it is not to be implied that we accord the same degree of importance to decisions of administrative bodies within this state.

In conclusion, we point to another matter relevant to the construction of tax statutes. It finds expression in the following statement from 51 Am Jur 366, Taxation § 316:

"* * * the correct rule appears to be that

where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government and in favor of the taxpayer or citizen.   \*   \*   \*"

See, also, *Miller v. Gearin,* 258 F 225, 226 (9th Cir 1919); *Gould v. Gould,* 245 US 151, 62 L ed 211, 213, 38 S Ct 53 (1917); *Crook v. Curry County,* 206 Or 350, 356, 292 P2d 1080 (1956); *Cabell v. Holman,* 144 Or 127, 136, 24 P2d 1; and our most recent statement in *State Ins. Com. v. Allstate Ins. Co.,* 70 Adv Sh 943, 956, 221 Or 371, 351 P2d 433; and 2 Cooley, Taxation (4th ed), 1119, § 503.

The judgment of the circuit court is affirmed.