276 September 23, 2013 No. 35

IN THE OREGON TAX COURT
REGULAR DIVISION

Ryan FINLEY,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5156)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to income tax, arguing that Defendant Department of Revenue (the department) improperly issued an assessment of tax to taxpayer based on the position that underpayment of estimated tax had to be calculated under ORS 316.587(8)(a) and could not be calculated under ORS 316.587(8)(b). Granting taxpayer's motion, the court ruled that as the text of the statutory provision contained no language that imposed a requirement that the prior year return referred to in ORS 316.587(8)(b) be timely filed, the department could not impose such a requirement within its rule promulgating authority.

Oral argument on cross-motions for summary judgment was held May 10, 2013, in the courtroom of the Oregon Tax Court, Salem.

John C. Rothermich, Garvey Schubert Barer, PC, Portland, filed the motion for Plaintiff (taxpayer).

Darren Weirnick, Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant (the department).

Decision for Plaintiff rendered September 23, 2013.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This matter is before the court on cross-motions for summary judgment.

## II. FACTS

The relevant stipulated facts are that Plaintiff (taxpayer) was a resident of Oregon for all twelve months of 2008 and 2009.

Taxpayer timely filed for an extension of time, until October 15, 2009, within which to file his 2008 Oregon personal income tax return. However taxpayer did not file his 2008 return until February 12, 2009.

The amount of tax reported as due on the 2008 return was substantially less than the amount of tax reported as due on the 2009 return.

On the four dates on which payment of estimated income tax in respect of the 2009 year was due, taxpayer made payments that were neither equal to one quarter of the tax shown as due on the late-filed return for 2008, nor equal to one quarter of 90 percent of the amount of tax due on the return filed for the 2009 year.

Defendant Department of Revenue (the department) issued an assessment of tax to taxpayer based on the position that underpayment of estimated tax had to be calculated under ORS 316.587(8)(a) and could not be calculated under ORS 316.587(8)(b).

### III.   ISSUE

The issue in this case is whether, in promulgating its rule under OAR 150-316.587(8)-(A), the department has validly required a timely filed return for a prior year as a condition for use of the provisions of ORS 316.587(8)(b).[1]

### IV.   ANALYSIS

The estimated tax payment requirement under Oregon law closely parallels the provisions of federal law. Persons with substantial income not subject to withholding are required to estimate the amount of tax that will be due on such income for a year and, generally, make payment of that amount in four quarterly installments in, or shortly after, the tax year. ORS 316.579.

If taxpayers do not make the required estimated tax payments when due, a penalty in the nature of interest is due. The penalty is computed based on the amount by which the payment, if any, made on a quarterly due date is less than the installment required to be paid on that date.

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2007.

Under ORS 316.587(8) the required installment is the lesser of:

"(a)   Ninety percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year);

"(b)   If the preceding taxable year was a taxable year of 12 months, the percentage of the tax shown on the return filed by the individual for the preceding taxable year that is established by the Department of Revenue by rule; or

"(c)   Ninety percent of the tax for the taxable year computed by placing on an annualized basis the taxable income for the months in the taxable year ending before the month in which the installment is required to be paid."

This case involves only the question of whether (a) or (b) from the foregoing applies. As to those statutory provisions, the rule promulgated by the department states that the amount stated in ORS 316.587(8)(a) (the 90 percent of tax rule) is interpreted to be:

"(A)   Ninety percent of the tax shown on the return for the taxable year (or, if no return is filed, ninety percent of the tax for such year)."

OAR 150-316.587(8)-(A)(3)(A). The rule promulgated by the department goes on to state that the amount stated in ORS 316.587(8)(b) (the prior year tax safe harbor rule) is interpreted to be:

"(B)   One hundred percent of the tax shown on the prior year's return, if qualified. This is sometimes referred to as 'safe harbor.' To use the prior year's tax to determine the required annual payment, *the prior year's return must have been a timely filed Oregon return, including extensions*, and the prior tax year must consist of 12 months."

OAR 150-316.587(8)-(A)(3)(B). (Emphasis added.) To summarize, in order to obtain any benefit from the provisions of ORS 316.587(8)(b), the department purports to require that the statutory language "the return filed by the individual for the preceding taxable year" be read as meaning "the return *timely* filed by the individual for the preceding taxable year." (Emphasis added.)

The disagreement of the parties is simple: is the timeliness requirement not expressed in the statute but added by the department in its rule a valid interpretation of the statutory requirements. The department concedes that it has not been granted legislative rather than interpretive rulemaking authority as to ORS 316.587(8).

The parties cast some of their arguments in terms of whether the word or phrase at issue is an exact term, an inexact term, or a delegative term. *See Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 15 P3d 29 (2000). The department does not argue that the words at issue are delegative terms.

In arguing for the validity of its interpretation of the prior year tax safe harbor rule, the department asserts, however, that "[t]he statutory text, context, legislative history and general maxims of statutory construction establish that the legislature intended timely filing when it referred to 'the tax shown on the return filed by the individual for the preceding taxable year.'" Taxpayer maintains that tax shown on a late filed return for the prior year may be used under ORS 316.587(8)(b).

The court agrees that the inquiry reduces to the question of whether the Oregon legislature intended that in order to have the benefit of ORS 316.587(8)(b), the amount of tax shown on a return for the prior year be an amount of tax shown on a timely filed return for the prior year.

A.   *Text*

The text of the statutory provision contains no language that imposes a requirement that the prior year return referred to in ORS 316.587(8)(b) be timely filed. If the legislature had intended that the return for the prior year be a timely filed return, the addition of the word "timely" could easily have been added to the statute. Indeed, as taxpayer points out, the legislature knows how to require timely filing of returns. It has, for example, provided in ORS 314.400 for a penalty if a return is not filed by the relevant due date. ORS 314.400(1).

Most importantly, the legislature has seen fit to actually refer to timely filing of returns in ORS 316.587(9),

subparagraph (a) of which applies when a return and amended return have both been filed "on or before the return due date (determined with regard to any extension of time granted to the taxpayer)." The court has great difficulty concluding that the legislature demanded timely filed returns in ORS 316.587(8)(b) without saying so, only to refer to such timeliness requirements in the next subsection of the statute.

B.   *Legislative View of Role of Department*

While the department concedes that it does not have legislative rulemaking authority in this area and that the terms in question are not "delegative," the context of the statutes relating to estimated tax calculation and payment bear review as to whether the legislature intended to vest in the department the authority to add the type of requirement—a timeliness requirement—that is involved in the department rule at issue here.

The statutory language of the estimated tax statutes in particular does not suggest the legislature intended the application of ORS 316.587(8) should be conditioned on requirements added by department rule making. There is no reference to department rule making applicable to subsection (8). That is in stark contrast to other places in the estimated tax regime where the legislature provided for department rule making. Thus, for example, as to amended declarations of estimated tax, such are to be made only "under rules prescribed by the department" and containing "information required by the department." ORS 316.563(4) and (5).

Further, the legislature specifically contemplated department rulemaking as to credits that would be available in calculation of estimated tax requirements for taxpayers who had overpaid tax for a prior year. ORS 316.583(4).

These textual provisions strongly suggest to the court that if, rather than requiring timely filing itself, the legislature intended to permit the department to add such a substantive requirement to the statutory statement referring to "a return filed for the preceding year," it would have

provided a legislative basis for such substantive department rule making.

C.   *Context*

Acknowledging that the statutory language contains no timeliness requirement, the department argues that such a requirement is "baked in" to ORS 316.587(8). To support this conclusion the department first proceeds from a premise that "[t]he purpose of ORS 316.587(8)(b), when read together with ORS 316.587(2) and (4), is to inform taxpayers, in advance, how much estimated tax they must pay by what dates to avoid underpayment interest." The department also observes that subsections (2) and (4) of the statute are "concerned with timing."

In the opinion of the court, the conclusion of the department regarding timing is simply without authority and is not persuasive. Subsection (2) of ORS 316.587 is concerned with timing only because the penalty for underpayment of estimated tax is an interest computation and all interest computations require a starting point in order to be completed. Subsection (2) provides the starting point for determination of an amount due but unpaid. Subsection (4), not unlike interest computation provisions in loan agreements, simply provides a rule for the order for application of payments when more than one payment date has elapsed. The leap from these provisions having to do with calculations to a conclusion about a substantive timely filed return requirement is unsupported and unwarranted.

The department premise that the statute has the purpose of informing taxpayers of the amount of payment needed to avoid penalty is also without any support in the text of the statute and the department offers no legislative history to support the conclusion. Subsection (8)(b) simply defines one element of a calculation, on the basis of which penalties may or may not be due, depending on which of three amounts is "the lesser." One of the amounts, the prior year tax amount, might be known to the taxpayer when the first estimated tax installment is due and that is why it is sometimes referred to as a safe harbor. However, that amount might well not be known at that time but rather

subject only to estimation, just as are the other two calculation possibilities.[2]

It may be that taxpayers may wish to take advantage of the safe harbor of subsection (8)(b), but they may also be ignorant of that provision. Or, they may calculate, guess, or hope that one of the other provisions of the statute provides a "lesser" amount to be paid. All of these points lead the court to dismiss as speculation the premise of the department's argument about how to interpret the prior year tax safe harbor rule.

The department then looks to the provisions of ORS 316.587(9)(a) and (b) for support, even though, as discussed above, the provisions of (9)(a) can be read as support for the conclusion that when the legislature desired to speak of timely filing as a requirement, it did so explicitly. The statutory provisions state:

"(a)   If an amended return is filed on or before the return due date (determined with regard to any extension of time granted to the taxpayer), then the term 'return' means the amended return.

"(b)   If during initial processing of the return the department adjusts the amount of tax due, then the term 'tax shown on the return' means the tax as adjusted by the department. This paragraph shall not apply if it is ultimately determined that the adjustment was improper."

The department argues that the provisions of subsection (9)(a) and 9(b) indicate a concern of the legislature with timeliness in respect of the estimated tax regime that, even without explicit provision in subsection (8)(b), should be read into that subsection.

---

[2] The court takes judicial notice of the fact that taxpayers with income from partnerships, estates, and trusts learn of "pass-through" tax items from those entities when they receive information returns from those entities. *Cf.* Treas Reg § 1.6031(b)-1T (as to information required to be given to partners). However, the due date for providing such information returns to, for example, a partner is the due date of the partnership return, determined with regard to extensions. Accordingly, a taxpayer with such income may simply have to estimate income expected from the partnership if that entity files its return on an extended due date falling after the date on which the taxpayer must first estimate taxable income for a year.

The first problem with this argument of the department is that the provisions of subsection (9)(a) provide a rule for which prior year return documents or information are to be used under subsection (8) of the statute in situations where a return is filed and then changed. *If* a taxpayer has filed both an initial and an amended return, and both are filed before the due date of a return for the prior year, determined with regard to any available extension, subsection (9)(a) answers the obvious question of which document is to be the prior year "return" for purposes of subsection (8) of the statute. The provisions do not require the filing of a return on time. Nor do they address the situation where only one return is filed, albeit belatedly.

Subsection (9)(b) provides that *if* a return is filed and the department adjusts the return in initial processing, the return as initially corrected is treated as the prior year return for purposes of subsection (8) of the statute. Subsection 9(b) also assumes that a return is filed but, quite importantly, says nothing about whether the return was filed in a timely fashion or not. Like subsection (8)(b), subsection (9)(a) contains no timeliness qualifier. And, as will be discussed below, the department has authority and responsibility to review and make adjustments to late filed returns.

The department points to certain testimony of its representative in a legislative hearing on the addition of subsection 9(b) as support for that subparagraph somehow imposing a requirement that a return be timely filed. The testimony however never touches on any timeliness requirement. The testimony in no way rules out the possibility that a late-filed return could be adjusted and the adjusted return would then serve as the return for application of ORS 316.587(8)(b).

Nor is the notion of the department receiving, accepting and processing an *untimely* return a notion foreign to the broader personal income tax scheme of which subsections (8) and (9) of ORS 316.587 are a part. The failure to file a return is recognized throughout chapter 316. The failure results in the statute of limitations for assessing deficiencies never beginning. *Cf.* ORS 314.410 (basic statute of limitations is three years *after* the return is filed).

If no return is filed, the department may compute and assess tax due based on the best information it has. ORS 305.265(10). However, even after an assessment is made where no return has been filed, the department may accept a return from the taxpayer who has been assessed and such a filing is treated as a return for all purposes of the law. *Id*. Such a late-filed return could, of course, be subject to initial processing and any changed calculation of tax due would be used to apply ORS 316.587(8) without any difficulty in applying that statute or subsection (9).

It should also be noted that the concern of the legislature with late filing of returns seems to be primarily addressed in ORS 314.400 which contains, initially, a penalty for late filing of five percent of the amount of tax due. ORS 314.400(1). A failure to file continuing for more than three months attracts a very steep penalty structure for failure to file when directed to do so. ORS 314.400(2)(b).

The department appears to suggest that the legislature intended to deny the prior year tax safe harbor provisions of ORS 316.587(8)(b) to late filers so as to provide an incentive for timely filing. The court does not find that position well taken as there are much more significant penalties or adverse consequences in the statutes applicable to late filers. Having provided the department with howitzers in the war against late filing, the court cannot conclude the legislature also provided the department with the "pop-gun" of denial of the prior year tax safe harbor.

In addition, the department's policy argument, that the safe harbor of ORS 316.587(8)(b) is to be denied to taxpayers as a way to encourage timely returns, is premised on the view that the safe harbor calculation will always, or even most often, be favorable. That is simply not necessarily the case, although it was the case for taxpayer. A more favorable result—*i.e.*, a lower estimated tax installment payment—might well be available under one of the other paragraphs of subsection (8). Indeed, if this particular taxpayer's income history had been reversed, with greater income in 2008 and much less income in 2009, use of the prior year tax safe harbor would have led to a very large overpayment of tax.

In some cases, the level of certainty available under subsection (8)(b) might be a benefit. The court cannot conclude, however, that the legislature intended to condition the availability of that benefit on a timely filed return. If it did so intend, the court is of the view it would have said so. The statutory context within which ORS 316.587(b) is found does not support the conclusions reached by the department. Indeed, that context supports the position of the taxpayer.

D.  *Implication of Oregon Reference to IRC Section 6654*

Each party claims some benefit from cases, rulings, or references to federal law with respect to the construction of ORS 316.587(8)(b). Both parties acknowledge that federal definitions are not incorporated as the statute in question does not involve the computation of taxable income. Under Oregon's "tie" to the federal code, parallel meaning only applies with respect to provisions on the measurement of taxable income. ORS 316.007.

Taxpayer notes that in ORS 316.587(9)(c) the department is directed to "consider the provisions of section 6654 of the Internal Revenue Code." Taxpayer next observes that the language of Internal Revenue Code (IRC) section 6654 as to the safe harbor for prior year tax is worded similarly to ORS 316.587(8)(b). Taxpayer points to Revenue Rule 2003-23, 2003-1 CB 511, a ruling of the Internal Revenue Service (IRS) holding that the return referred to in the federal counterpart to ORS 316.587(8)(b) *does not need to be a timely filed return*. Taxpayer concludes by asserting that if one considers IRC section 6654 as directed by the Oregon legislature, one must consider the ruling of the IRS that is directly on point on the question in this case.

The department answers that the consideration required under ORS 316.587(9)(c) was intended by the legislature only to apply to elements of the federal estimated tax scheme that had been changing from time to time under the IRC—namely, the percentage of the last year tax that must be used in the safe harbor calculation. That number had moved under federal law on a fairly regular basis.

The court is of the opinion that the department has the better argument on this point. The reference to

IRC section 6654 is also made in ORS 316.563(2), a statute defining a *de minimis* amount of tax below which no estimated payment is required. There is a corresponding federal *de minimis* amount defined in IRC section 6654(d)(1). The legislative history of the provisions in Oregon law referencing IRC section 6654 supports the conclusion that the Oregon legislative directions to consider IRC section 6654 are designed to urge the department to put Oregon taxpayers in estimated tax positions comparable to that in which they find themselves for federal purposes without the legislature having to always reconnect to the changing federal statutory provisions.[3]

E.   *Implication of Prior Federal Decisions and Rulings*

Arguing that federal authorities support its position, the department points to Revenue Rulings of the IRS and one decided case, arguing that they support the conclusion that, as of the time of the adoption of ORS 316.587(8)(b), the return filed under the prior year safe harbor provisions of parallel federal law had to be a timely filed return. The department then argues that if this is so, the Oregon legislature either must have intended or should be viewed as having intended the "return" referred to in ORS 316.587(8)(b) to be a timely filed return.

The authorities upon which the department relies do not compel, or even support, its position. The case to which the department points is *Evans Cooperage Co., Inc. v. United States,* 712 F2d 199 (5th Cir 1983). In that case the corporate estimated tax was at issue. The provisions applicable to corporations were essentially the same as those applicable to individuals and on this score the reliance of the department on the *Evans Cooperage* decision cannot be faulted. However, in *Evans Cooperage* the taxpayer in fact filed a timely return and then many years later, filed an amended return upon which it wished to rely in computing its estimated tax penalty. The holding of the court in *Evans Cooperage* is that an amended return filed before the time defined for filing a return cannot be used to compute the

---

[3] Provision of considerations for the department avoided a delegation problem that had required a constitutional amendment to allow Oregon to fix its income definitions by reference to federal law. *Cf.* Oregon Constitution, Article IV, section 32.

estimated tax obligations of a taxpayer. *Id.* at 204-05. The case did not involve the one and only return filed by the taxpayer, albeit after the due date for the return. The observations of the court about the importance of timely filed initial returns are therefore complete dicta.

Additionally, the court in *Evans Cooperage* viewed with suspicion the taxpayer's amended return, noting that amendments are not formally recognized in federal law. *Id.* at 204. Far different is the status of initial returns that, under Oregon law it appears, must be accepted if filed prior to an assessment of tax. *See* ORS 305.265(10)(b).

Apart from *Evans Cooperage*, the department points to two Revenue Rulings, Rev Rul 78-256, 1978-1 CB 438 and Rev Rul 86-58, 1986-1 CB 365. The problem with this reliance is that the rulings only deal with the question addressed by ORS 316.587(9)(a), namely which return is to be used for estimated tax purposes when an initial return and an amended return are both filed before the due date for the return for the prior year, determined with regard to extensions. These rulings do not support a conclusion as to the meaning of the return requirement in ORS 316.587(8)(b) because they, like *Evans Cooperage*, apply only to amended return situations, a fact situation not addressed by ORS 316.587(8)(b) or its federal counterpart.

F.  *Administrative Considerations*

In this case taxpayer filed his return for 2008—the prior year—reasonably soon after the due date, with an extension. However, before concluding that the position of taxpayer is the correct one, the court must consider whether the estimated tax provisions would operate without unwarranted difficulty both in the case of a somewhat late prior year return and in the extreme case of no return for the prior year having been filed.

In the case where no return is filed for the prior year, ORS 316.587(8)(b) cannot apply as it contemplates a return being filed.[4] However, calculation of the penalty, if any, for

---

[4] The same would appear to be true if a taxpayer did not file until after an assessment. In such cases, the department may not have to accept the return. *See* ORS 305.265(10)(b).

underpayment of estimated tax is not frustrated by the failure of the taxpayer to file a return. Rather, the provisions of subsection 8(a), that specifically contemplate the absence of a return, or subsection 8(c), that has no return requirement, would apply. If the provisions of the prior year tax safe harbor would be more favorable, the taxpayer's failure to file at all, or before assessment, will produce a detriment.

In the absence of a return filed by a taxpayer, the calculation of penalty would proceed on the basis of the tax as computed by the department, using the best information available, for the year in respect of which the penalty is being considered. The department would presumably compute the estimated tax due under ORS 316.587(8)(a) and take into account any payments of estimated tax actually made by the taxpayer for the year in question.[5] If a taxpayer, although delinquent as to return responsibilities, had paid monies in under the estimated tax system, he might well avoid penalty or have penalty reduced. This fact shows that compliance with the purpose of the estimated tax regime— adequate payment of ultimate liability in advance—can be partially or even fully satisfied even when no return is filed for the prior year.

Nor is there any difficulty in actually computing the penalty for underpayment when a return for a prior year is filed late, even very late. In such an event, the department would receive a return and would have to accept it unless it was filed after the tax for the prior year had been assessed based on the best information available to the department.[6] Even in that event, the department might agree to accept the return, in which case, under ORS 305.265, the return would be subject to adjustment and the provisions of ORS 316.587(9)(b) would, as discussed above, apply. *See* ORS 305.265(10)(f).

---

[5] The court says "presumably" because the benefit, if any, of a calculation under ORS 316.587(8)(c) depends upon information unlikely to be in the possession of the department.

[6] The court concludes that the department would have to receive and process the return because ORS 305.265(2) states that the department "shall" examine or audit a return that is "filed." Again, the statute does not specify that the return be "timely" filed. Refusal to accept is only discussed in ORS 305.265(10) in cases where assessment has occurred.

In the event the return had to be accepted or was accepted notwithstanding an assessment, the department could then proceed to calculate the penalty, if any, due under the estimated tax provisions by comparing the least of the required installment amounts with any estimated tax payments made and then proceeding to calculate the interest penalty if, in fact, there had been an underpayment. This example demonstrates that taxpayers may be delinquent in filing returns for the prior year and yet may have a reduced penalty, or no penalty, imposed where adequate payments have been made.

That said, the legislative concern revealed in the cross-references to IRC section 6654 indicate that if there is something "baked in" with respect to the estimated tax provisions under Oregon law, it is that Oregon provisions, including those set by the department in rules, be parallel to the provisions of federal law. That conclusion is also consistent with case law on how to interpret provisions of Oregon tax law that are not specifically linked to federal definitions but nonetheless are similar to comparable federal provisions.

In *Ruth Realty v. Tax Commission*, 222 Or 290, 353 P2d 524 (1960) the Oregon Supreme Court considered the construction of an Oregon statute that was modeled on a federal statute. This occurred as to a period before Oregon had linked its income tax statutes to the IRC, at least insofar as the definition of income is concerned. *Ruth Realty* is therefore authority for how Oregon statutes that are modeled on federal statutes, but not statutorily linked to those federal statutes, are to be construed.

The court in *Ruth Realty* and in later cases such as *Gamble v. Tax Comm.*, 248 Or 621, 432 P2d 805 (1967) has expressed a view that provisions in Oregon law modeled on federal provisions should be interpreted to achieve similar results. At the same time, the court has considered federal authorities interpreting federal provisions but has based its decisions on the most cogent reasoning when federal authorities conflict. And, importantly, the court has not considered itself limited to consideration of only the federal authorities

that existed at the time of the adoption of an Oregon statutory provision.

In this case, the principles of parallel construction and adherence to the most cogent reasoning are not in conflict. For the reasons stated in this order, the court concludes that ORS 316.587(8)(b) is most properly read as not containing any timeliness requirement. That conclusion is not at odds with the actual holdings of the relevant federal authorities. Whatever may be the case with treatment of amended returns, the only federal authority on point is Rev Rul 2003-23, 2003-1 CB 511, a ruling that does not find a timeliness requirement in the parallel federal statute.

To construe Oregon law consistently with Rev Rul 2003-23 also produces a result that places Oregon taxpayers in the same position regardless of whether the federal estimated tax or the Oregon estimated tax is at issue. That is the primary value that is "baked in" to the Oregon estimated tax regime.

## V.  CONCLUSION

For the foregoing reasons, taxpayer's motion is granted and department's cross-motion is denied. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is denied.